[No. 6,141.]

## LA SOCIETE FRANÇAISE D'EPARGNES ET DE PREVOYANCE MUTUELLE ET AL. *v.* BEARD ET AL.

NOTARY'S CERTIFICATE.—*Query:* Whether in an action to foreclose a mortgage against a married woman—under a simple denial of the execution of the mortgage—the truth of the notary's certificate can be attacked?

MARRIED WOMAN—MORTGAGE—ACKNOWLEDGMENT—SURPLUSAGE. — The law as it was before the Codes, did not require the notary, in taking the acknowledgment of a married woman, himself to make her acquainted with the contents of the instrument, but only that she should be made acquainted with them; and the words "by me" in a certificate under that law are surplusage.

EVIDENCE—PRESUMPTION—CONFLICT OF EVIDENCE.—A *prima facie presumption* of law on the one hand, and the opposing testimony of two or more witnesses on the other, may constitute such a conflict of evidence, that a finding in favor of the presumption will not be disturbed.

APPEAL from a judgment in favor of the plaintiffs, in the Nineteenth District Court, City and County of San Francisco. WHEELER, J.

The facts are stated in the opinion.

*W. T. Wallace,* and *John F. Swift,* for Appellants.

The laws of this State have provided, that to make a deed of a married woman binding upon her, she shall have the instrument explained to her upon examination, without the hearing of her husband, by the notary, at the time of the execution thereof, and be allowed the privilege then and there of changing her mind or retracting her signature if she so desires. It is her *locus pœnitentiæ,* secured to her by the law itself. (*Selover* v. *Am. Russ. Com. Co.* 7 Cal. 274–5; *Barrett* v. *Tewksbury,* 9 Id. 13; *Jansen* v. *McCahill and Wife,* 22 Id. 593.) Parol evidence may be admitted to impeach the certificate. As to the $175,000 mortgage, see 1 Hitt. art. 673. As to the $50,000 mortgage, see Code Civ. Proc. §§ 1948, 1833, 1920, 1926.

*John A. Stanley,* and *George R. B. Hayes,* for Respondent.

The certificate of the notary is regular on its face. It is a general and well-established rule of law that the statement of facts contained in that certificate cannot be impeached, except upon an allegation of fraud, or some imposition practiced upon her. No such allegation is contained in the answer; nor was there any attempt or offer to prove any fraud or imposition. It was not competent, therefore, for her to impeach the notary's certificate by parole testimony. (1 Jones on Mortgages; Proffatt on Notaries, § 155, *et seq.; Jameson* v. *Jameson,* 3 Whart. 457; *Heeter* v. *Glasgow,* 79 Penn. St. 79; *Singer Manuf'g Co.* v. *Rock,* 84 Id. 442; *Graham* v. *Anderson,* 42 Ill. 514; *Monroe* v. *Poorman,* 62 Id. 523.

*Garber & Thornton,* and *Coleman,* also for Respondent.

The certificate of acknowledgment is *prima facie* proof of the facts it contains, if within the officer's range, and is open to rebuttal only by proof of gross concurrent mistake or fraud. (2 Whart. Ev. § 1052; *Norton* v. *Nichols,* 35 Mich. 150; *Harkins*

v. *Forsyth*, 11 Leigh, 301 ; *Kerr* v. *Russell*, 69 Ill. 670 ; *Graham*
v. *Anderson*, 42 Id. 518 ; *Moore* v. *Fuller*, 6 Oregon, 274, citing
*White* v. *Graves*, 107 Mass. 325 ; *Russell* v. *Baptist*, 73 Ill.
341 ; *Harpending* v. *Wylit*, 14 Bush, 381 ; *Baldwin* v. *Snowdan*,
11 Ohio St. 203 ; *Williams* v. *Powers*, 48 Tex. 146 ; *Bissett* v.
*Bissett*, 1 Har. and McH. 211 ; *Ridgley* v. *Howard*, 3 Id. 321 ;
*McNeeby* v. *Rucker*, 6 Blackf. 393 ; *Greene* v. *Godfrey*, 44
Maine, 25.)

Department No. 1, McKINSTRY, J. :

The Court below found that the defendant, Jane M. Beard,
*signed* the two mortgages set forth in the pleadings and men-
tioned in the findings, " of her own free will and with full
knowledge of the terms and conditions thereof, and well know-
ing what the contents thereof were, and that the *certificates of
said notary of the acknowledgment of mortgages are not, nor is
either of them, in any respect untrue.*"

The certificate of the notary attached to the mortgage re-
ferred to as the $175,000 mortgage, is in the words and figures
following :

"STATE OF CALIFORNIA,       ⎫
"City and County of San Francisco,  ⎬ ss.
                                         ⎭

" On the 19th day of June, 1872, before me, F. J. Thibault, a
Notary Public, in and for said city and county, residing therein,
duly commissioned and sworn, personally appeared Henry G.
Ellsworth, Elias L. Beard, and Jane M. Beard, his wife, whose
names are subscribed to the annexed instrument, as parties
thereto, severally personally known to me to be the same per-
sons described in, and who executed the said instrument, and
they severally duly acknowledged to me that they executed the
same freely and voluntarily, and for the uses and purposes
therein mentioned.

"And the same Jane M. Beard, wife of said Elias L. Beard,
having been, by me, first made acquainted with the contents of
such instrument, duly acknowledged to me, on an examination
separately and apart from and without the hearing of her hus-
band, that she executed the same freely and voluntarily, for the
uses and purposes therein mentioned, without fear, compulsion,

or undue influence of her husband, and that she does not wish to retract the execution of the same.

"In witness whereof, I have hereunto set my hand and affixed my official seal at my office in the City and County of San Francisco, the day and year last above written.

"[SEAL.]                    F. J. THIBAULT, Notary Public."

In the view we take of this case, it is not necessary to decide whether the notary's certificate can properly be attacked under the pleadings herein; we shall assume that its recitals may be disputed.

It is said by counsel for the appellant that the certificate is not true in so far as it states that "the said Jane M. Beard, wife of said Elias L. Beard, *having been by me first made acquainted with the contents of such instrument,* duly acknowledged," etc.

When the acknowledgment was taken, the law did not require of the notary himself to make the married woman acquainted with the contents of the instrument, but only that she should "be made acquainted," etc. (Acts of 1850, p. 249.) There certainly was evidence that she had been made acquainted with the contents. Giving no weight to the circumstance that she *signed* the mortgage, she herself declares in her testimony that, in response to an inquiry of the notary, "I suppose you know the contents of this?" (the mortgage) she answered, "I think— I presume I do, or I think I do, or something of that kind." "*I merely meant to say I had heard what it was,* but of course I could not say that I *knew* it." This is evidence not only that she *said* she thought she knew the contents, but *tending* to prove that she had heard what the instrument was, and in fact *knew* its contents. The witness, A. M. Crane, testified: "Mr. Thibault took the mortgage in his hand, and asked Mrs. Beard, or said to her, 'I suppose you understand, Mrs. Beard, what this is;' she replied, 'Yes, I suppose I do; I understand it to be a mortgage on *our lands,* or on the Mission lands'—I am not sure which expression she used. He then asked her the usual questions that are put to a *femme covert,* whether she executed freely and voluntarily, or wished to retract it." But for the circumstance that the mortgage created a lien upon her *separate property,* she need not have executed or acknowledged

it, and her statement, as recalled by Mr. Crane, certainly tended to prove that she was aware that her lands were included in the description of the instrument.

In the portion of the notarial certificate " having been by me first made acquainted with the contents," the words " by me " are surplusage. It would have been enough if she had been made acquainted, or become acquainted with them from any other source. (*Jansen* v. *McCahill*, 22 Cal. 565.) But the notary *did* make her acquainted with the contents, if he recalled to her memory the information she had already received. It is admitted that the certificate is *prima facie* proof of the facts set forth in it. The Court below was, therefore, justified in finding that its recitals were true, unless the presumption of their truth was overcome by the evidence. The notary had died previous to the trial; and the only persons then living who were present when the acknowledgment was taken, (while both admitted that the attention of the party was called to her knowledge of the contents of the instrument,) *differed* in respect to the form of the inquiry put by the officer, and as to the form and substance of the defendant's reply. In this condition of the evidence there was, at least, a substantial conflict with respect to the truth or falsity of the recitals in the certificate, and wherever such conflict has appeared, we have uniformly declined to interfere with the findings of the Court below. There is no pretense but that the defendant was acquainted *in part* with the contents of the instrument, and that her mind was directed to its contents by the questions of the notary. After the lapse of time between the taking of the acknowledgment and the trial, and considering the inattention of the witnesses to the details of the transaction, for which we must give them credit if we would attribute *good faith*, at least to one of them, we cannot say that the Court below found against the evidence in its conclusion that the certificate declared the truth. The contrary to the statement of the certificate should have been distinctly proven. Here, in addition to the presumption of an imperfect recollection, which lapse of time would suggest in respect to facts of which neither of the witnesses took special note—the one because she did not know the importance of the *formula,*

and the other because if he had noticed the omission he would have prevented the payment of the money until the law had been complied with—we have the further circumstances that the two witnesses (both endeavoring to recall the truth) do not agree in their recollection.

In respect to the transaction of the acknowledgment of the $60,000 mortgage, much of what has been said will apply. The recollection of Mrs. Beard seems even more indefinite in reference to that acknowledgment than in respect to the $170,000 mortgage. The other witness, A. E. Crane, after proceeding with considerable prolixity to explain his relations to the defendants, and the origin of their acquaintance, added: "She had western lands; she was talking to me about them; the idea ran in my head she was transferring some of those western lands; at least I didn't hear anything to change my mind but what it may have been some of those western lands'; and there being no one in the office but herself, and with the mutual inquisitiveness existing, I am free to say that there was no paper read to give me any idea of what she was selling." To the question "Was any explanation made?" witness replied: "I *cannot say; I do not recollect* any explanation." Being further pressed by the inquiry, "Could Thibault have made any explanation to her of the contents of any instrument there that you wouldn't have heard it?" the witness was quite confident that, although he might not recollect all the conversation she had with the notary, had there been any explanation about the contents of the paper he would have known it and known what the transaction was about. The witness did not even remember what Mrs. Beard had stated, to wit, that the notary said, as *she* remembered—" ' I suppose you are acquainted '—and I said, ' I supposed I was,' " etc.

Giving all credit to the good faith of the defendant who testified, we cannot say that this testimony so far removed the effect of the presumption which the law attaches to the notarial certificate, as that such presumption did not create even a substantial conflict in the evidence.

Judgment and order affirmed.

ROSS, J., and McKEE, J., concurred.