[No. 15021.    Department One. — January 7, 1893.]

ISABEL SOBERANES, by her Guardian ad Litem, Appellant, v. ABEL SOBERANES, Respondent.

Constructive Fraud — Voluntary Gift to Son by Aged Mother — Exclusion of Other Children — Illiteracy. — The transfer by an aged mother, by way of gift, of all her estate to one of her sons, to the exclusion of all her other children, will not be set aside as constructively fraudulent, where it appears that the gift was made freely and voluntarily, and with full knowledge of all the facts and comprehension of the nature and effect of the transfer, and in the execution of a purpose long entertained by her, originating in a desire to show her appreciation of the son's devotion and services, and without any undue influence or fraud upon his part, although, by reason of her illiteracy and want of experience and knowledge of business affairs, she was not able, unassisted, to take care of her property, and by reason thereof was liable to be deceived and imposed upon by designing persons in the transaction of her business.

Id. — Trust Relation — Scrutiny of Equity — Right of Son to Receive Bounty from Mother. — Transactions between an aged mother and her son, in whom she reposes high trust and confidence, which result in the voluntary transfer to the son of all of her property, should be thoroughly sifted by a court of equity; but there is no rule which creates a disability in the son to take a bounty under such circumstances,

and where the deed is voluntarily given by the mother with her eyes open, and there is no imputation of undue influence, it will not be set aside merely upon the ground that an honorable man would not accept a gift which strips the mother of all of her property and leaves her dependent upon the charity of others.

ID. — DISPOSITION OF WHOLE ESTATE OF DONOR. — A person in possession of all of his faculties has a right to dispose of all of his property as he sees fit, and a voluntary disposition will not be set aside simply because the donor has divested himself of all of his property.

ID. — PRESUMPTIVE INVALIDITY OF TRANSFER — BURDEN OF PROOF — FREE ACTION OF DONOR. — Although transactions between an aged or diseased and enfeebled parent and one of several children, whereby the parent conveys his entire estate to such child, to the exclusion of other children dependent upon his bounty, will be watched by courts of equity with the most scrutinizing jealousy, and will generally be held presumptively void upon a showing of confidential relations, without a showing by the donor of any actual imposition upon him, and will be set aside upon the discovery of the least fraud, and the burden is upon the donee to show that the gift was made freely and voluntarily, with full knowledge of all of the facts, and with perfect understanding of the effect of the transfer, yet where it is shown by the donee that the gift was freely and voluntarily made, and no imposition was practiced upon the donor, the conveyance will not be set aside.

ID. — MORAL OBLIGATIONS NOT ENFORCEABLE IN EQUITY. — Neither courts of equity nor law will enforce mere moral obligations; and a voluntary conveyance will not be set aside merely because of such moral obligations, however strongly they appeal to the sentiment of equity and justice.

ID. — WANT OF INDEPENDENT ADVICE — GREAT AGE OF DONOR. — The fact that the mother did not have independent advice will not vitiate a free and voluntary gift to her son, made with a full understanding of all the facts and of the effect of the transfer, nor does the fact that she was of great age alone warrant the setting aside of the conveyance.

APPEAL from a judgment of the Superior Court of Monterey County.

The facts are stated in the opinion of the court.

*D. M. Delmas,* for Appellant.

*Myrick & Deering,* and *Alexander & Daugherty,* for Respondent.

PATERSON, J. — This action was brought to set aside a transfer of certain real estate, valued at one hundred thousand dollars, alleged to have been procured by defendant from his mother through the exercise of undue influence and artful schemes.

The case is before us on the judgment roll alone.  The court found the facts to be as follows: The plaintiff— now an incompetent person, represented by her guardian — is about sixty-five years of age, uneducated and illiterate.  She has never been competent to attend to, understand, or transact the ordinary business of life, except such as relates to household duties, but in the latter respect has always been the head of the family, and discharged the duties of her position as a wife and mother with full competency, wisdom, and prudence. · Plaintiff, at the time of the transfer, was in possession of all her natural mental faculties.  Francisco Soberanes, plaintiff's husband, died in 1887, leaving real and personal estate of the value of two hundred thousand dollars.  During the latter years of his life he was mentally infirm, and surrendered the management of his business affairs to his son, the defendant, who acted as his agent and attorney in fact.  The latter's administration of the father's business was not satisfactory to the other children, and this led to an estrangement between him and them, but not of a serious or lasting character. These dissensions did not extend, however, to the father and mother, nor were all the children involved therein. Soon after the father's death, disputes as to who should administer upon his estate and manage its affairs arose among the children.  A family council was held, which resulted in more bitterness and distrust, and the administration of the estate was intrusted to·a stranger.  The estate was finally distributed to the heirs, — one half to the surviving widow, and the balance to the children, six in number, in equal shares.  After the distribution of the estate, as stated, only the defendant continued to reside with his mother on that part of the rancho which had been set apart to her.  At all times since the death of Francisco, the defendant has been, and is now, his mother's sole agent and confidential adviser, and has had, and now has, full and absolute control over her business; but the defendant has never had control of her person, except such control as a dutiful and affec-

tionate son should properly exercise over the person of an aged and affectionate mother.     Since the distribution of the estate, personal hostility between the defendant on one side, and some brothers and sisters on the other, has been increased by business and personal difficulties. The plaintiff identified herself with Abel's business interests, but as far as possible refrained from any personal antagonism with the other children.     Her motherly affection was deep and broad enough to cover them all, and she bewailed the unhappy conditions, and frequently besought them to end their quarrels; but the breach widened, and in the end the mother was estranged from all her children, except the defendant, Abel, and a married daughter.     While the disputes were pending and progressing, plaintiff frequently declared that she would give her property only to such of her children as would respect and adhere to her.     During the time stated, defendant acquired, and now retains, plaintiff's complete confidence, and by reason thereof she gave to him absolute control of all her property, and everything pertaining thereto.     This was not brought about, however, by any skillful contrivance, false representation, or concealment, nor has the defendant dominated the will or directed the judgment of plaintiff in any transaction, or in any manner exercised undue influence over her. Ever since his father's death the defendant has taken great interest in his mother's personal welfare.     This interest was not unusual or pretended, but natural.     On May 24, 1890, the plaintiff conveyed to defendant the lands described in the complaint.     This conveyance was intended as a gift, and as a matter of fact the consideration named in the deed, viz., five hundred dollars, was never paid, nor intended to be paid, to the plaintiff. The land was worth one hundred thousand dollars.     At the same time she gave to the defendant and his married sister, above referred to, five hundred head of cattle, valued at eight thousand dollars.     At the time the deed was executed, there were present, besides the plaintiff,

an attorney, who drew the deed, the notary, and Dr. Gordon, a physician. The attendance of these persons was procured by the defendant to serve as witnesses to the execution of the deed, and as to the competency of plaintiff to execute it. The plaintiff did not have the advice of any person about the transaction, nor did she wish to have any advice, the deed having been executed and delivered by her freely and voluntarily. She was at that time able to comprehend and understand the nature, character, and effect of the transaction, and made the deed freely and intelligently, and fully comprehended the effect of the same. Plaintiff was, at that time, however, by reason of illiteracy and want of experience and knowledge of business affairs, unable, unassisted, to properly manage and take care of her property, and by reason thereof was liable to be deceived and imposed upon by designing persons in the transaction of business. Said real and personal property was all the property owned or possessed by the plaintiff.

The court found, as conclusion of law, that plaintiff was not entitled to the relief claimed, and rendered judgment in favor of the defendant. From this judgment the plaintiff, by her guardian, has appealed.

The facts found, as stated above, do not warrant the court in ascribing the deed in question to undue influence. It is apparent, if the facts stated be true, and they must be so regarded, that the plaintiff was not the dupe of the defendant's artifices, the victim of his contrivances, or in any way subjected to his sway. The defendant's position was one of high trust and confidence, and binding him, both by honor and in law, not only to abstain from anything like craft or guile, but to be generous and fair, and his conduct should be examined with the greatest scrutiny; but there is no rule which creates a disability to take a bounty under the circumstances narrated. Transactions of the kind in question should be thoroughly sifted, but a voluntary deed, free from any imputation of undue influence, exe-

cuted by a mother with her eyes open, cannot be set
aside merely upon the ground that an honorable man
would not accept a gift which strips his mother of all her
property and leaves her dependent upon the charity of
others.    A person in possession of all his faculties has
a right to dispose of his property as he sees fit, upon
the principle stated by Lord Nottingham, that if he will
improvidently bind himself up by a voluntary deed,
he need not expect the court to break the fetters put
upon himself by his own folly.    To hold that gifts vol-
untarily made, and with full knowledge of all the facts,
and of the nature and effect of the transfer, should be
set aside because the donor had divested himself of his
property, would be to establish a rule that no man can
make a voluntary disposition of his estate except by
will.    (*Ralston* v. *Turpin,* 129 U. S. 675; *Saufley* v. *Jack-
son,* 16 Tex. 581.)

There is no doubt as to the principle applicable to
cases of this kind.    Transactions like the one under
consideration are watched by courts of equity with the
most scrutinizing jealousy, and are generally held to be
presumptively void.    They will be set aside upon the
discovery of the least fraud, and every presumption
ought to be indulged against them.    The person who
makes the donation and bestows the confidence is not
bound to show that any imposition has been practiced
upon him.    It is sufficient for him to establish intimate
and confidential relations with the donee.    Some of the
cases hold that undue influence is not to be inferred
from the relation of parent and child, where the gift is
from the parent to the child (*Millican* v. *Millican,* 24
Tex. 446); but where the parent is of great age, or is
enfeebled by disease, and conveys his entire estate to
one child, to the exclusion of other children dependent
upon his bounty, the burden is unquestionably upon
the donee to show that the gift was made freely and
voluntarily, and with full knowledge of all the facts,
and with perfect understanding of the effect of the trans-

fer. (*Todd* v. *Grove*, 33 Md. 194; *Highberger* v. *Stiffler*, 21 Md. 352; 83 Am. Dec. 593.)

At the argument, some suggestions were made which, if true, lend a moral aspect to the case that strongly appeals to the sentiment of equity and justice, but they are not verified by the record, and if they were, it would be sufficient to say that neither courts of equity nor of law have a right to enforce mere moral obligations. The findings of the court are conclusive. They show that the plaintiff's gift was made in the execution of a purpose long entertained by her, originating in a desire to show her appreciation of defendant's devotion and services, and they negative expressly and entirely all the material allegations of the complaint.

It is claimed by the appellant that the transfer should be set aside because the plaintiff did not have independent advice. No case has been cited which holds that it must be shown that the donor acted upon independent advice in transactions between parent and child, when it appears that the gift was made freely, voluntarily, and with full understanding of all the facts and the effect of the transfer. The rule in this regard is not the same as in the case of a gift from a client to his attorney.

In *Allore* v. *Jewell*, 94 U. S. 506, and *Richards* v. *Donner*, 72 Cal. 207, cases upon which the appellant relies, it appeared that the grantor did not fully understand the nature and effect of the conveyance. All of the cases cited contain some ingredient showing undue influence sufficient to induce the conclusion that the act was not perfectly free and voluntary on the part of the donor.

We do not regard the age of the plaintiff as a controlling fact in the case. Some of the greatest men of modern times have displayed the highest abilities after passing the age of threescore and ten. Notable instances of this are found in the lives of Disraeli, Gladstone, Bismarck, and of Lord Mansfield, who left the bench at the age of eighty-four. Chancellor Kent wrote his great commentaries after he had retired from the

bench on account of having reached the period of life fixed by the constitution for judicial superannuation.

Judgment affirmed.

GAROUTTE, J., and HARRISON, J., concurred.

Hearing in Bank denied.