[L. A. No. 1929.  Department One.—June 22, 1907.]

## JOSEFA RUIZ DE ARELLANES, Appellant, v. JUAN B. ARELLANES, Respondent.

GIFT OF LAND—ABSENCE OF FRAUD—DEED FROM MOTHER TO SON—IRREVOCABILITY OF GIFT.—An absolute gift of land made by a mother to her son freely and voluntarily in the execution of a purpose conceived by her so to dispose of the property, without the exercise of any fraud on the part of the son, and with full understanding on her part of all the facts and the effect of such a transfer, cannot afterwards be set aside at the instance of the donor.

ID. — FRAUDULENT CONVEYANCE — CONFIDENTIAL RELATION — FINDINGS NEGATIVING FRAUD—EVIDENCE.—In an action by a mother to set aside a deed executed by her to her son on the ground that he had procured its execution by certain false and fraudulent representations, the evidence reviewed and held to sustain the findings to the effect that the son had never taken advantage of the confidential relation existing between him and his mother, had never made the representations as alleged, or any false or fraudulent representation, or any request for the execution of the deed, and that the same was executed by the mother voluntarily and with full knowledge of the facts and of the effect of the transfer, and with the intent to make an absolute donation to the son.

ID.—CREDIBILITY OF WITNESS.—The amount of credit to be given to the positive testimony of any witness is solely a question for the trial court, except perhaps where the testimony in the light of the undisputed facts is inherently so improbable and impossible of belief as in effect to constitute no evidence at all.

ID.—JURY TRIAL—FINDINGS OF ARE ADVISORY—FINDINGS BY COURT.— In an action to set aside a deed for alleged fraud of the grantee, the parties are not entitled to a jury as a matter of right, and if a jury be called in it simply acts in an advisory capacity, the court being compelled to make findings of its own. In so doing the court is free to adopt or reject the findings of the jury as it deems proper, and in determining whether the findings of the court are

sustained by the evidence, it is immaterial that such findings are contrary to the findings of the jury.

ID.—EVIDENCE AS TO PROPERTY OF OTHER CHILDREN OF GRANTOR.—In an action by a mother to set aside on the ground of fraud a deed of gift executed by her to one of her sons, evidence of other of her children as to whether their father had left any estate to them when he died is properly excluded when it is undisputed that the father did not die until some years after the execution of the deed.

ID.—IMMATERIAL EVIDENCE—UNPREJUDICIAL EXCLUSION OF EVIDENCE.—In such action the exclusion of the evidence of a daughter as to whether her mother had ever given her any portion of her land at any time is without prejudice, when it is undisputed that by the deed assailed the mother gave practically all her property to the defendant; and evidence of such daughter as to her financial condition since the execution of the deed is immaterial. So, also, the exclusion of the evidence of another son as to the property owned by him at the time of the execution of the deed, assuming it to have been admissible, is without prejudice, when it otherwise appears that such son had little if any property.

EVIDENCE—WITNESS—RATIONAL APPEARANCE.—A witness to a transaction is competent to testify as to whether one of the parties thereto then appeared to be rational.

ID.—READING ANSWER IN DEPOSITION—WAIVER OF OBJECTION.—A party by permitting an answer to a settled interrogatory in a deposition, which is strictly responsive to the question, to be read without objection, thereby waives the right to object to the answer or to move to strike it out.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

S. E. Crow, and J. L. Murphy, for Appellant.

Henley C. Booth, and William H. Chapman, for Respondent.

ANGELLOTTI, J.—This action was commenced on March 23, 1903, to obtain a decree setting aside a deed made by plaintiff to defendant on March 21, 1881, adjudging plaintiff to be the owner of the land described in such deed, and requiring defendant to account for the rents, issues, and profits thereof which had come into his hands. Judgment went for the de-

fendant, and plaintiff appeals therefrom and from an order denying her motion for a new trial.

The land involved in this action is a tract known as subdivision 12 of the Rancho Punta de la Laguna, in Santa Barbara County, containing 2,042.45 acres, or thereabouts. On March 21, 1881, plaintiff owned this land as her separate property, and had been such owner for several years. Its value was then about twenty thousand five hundred dollars. Her husband, Luis Arellanes, owned subdivision 11 of the same rancho, which contained 2,554.59 acres, and was of about the same value. The only other property owned by plaintiff was some live stock, consisting of about twenty-five head of cattle, and the undivided one half of a lot in Santa Barbara worth from eight hundred to one thousand dollars. At that time there were six living children of plaintiff and said Luis, four married daughters and two grown sons, one being the defendant. Plaintiff was then about sixty-four years of age, and was unable to read, write, or understand the English language. Defendant was the only child remaining with his parents, who lived on one of the two tracts above named. Plaintiff reposed implicit trust and confidence in defendant, and had several years before given him a general power of attorney, which was not revoked until shortly before the commencement of this action. On March 21, 1881, Luis Arellanes, in consideration of three thousand dollars to be paid, conveyed subdivision 11 of said rancho to the defendant, and at the same time plaintiff executed a grant, bargain, and sale deed purporting to convey to defendant, for the express consideration of one dollar, subdivision 12 of said rancho. This deed was recorded in the county recorder's office of Santa Barbara County on March 23, 1881. In the year 1884 Luis Arellanes died, having first conveyed to plaintiff the remaining one half of the Santa Barbara lot. Since that time plaintiff has resided in the city of Santa Barbara on said lot, and defendant has been in possession of the land here involved, residing thereon with his family. The defendant kept his mother's stock on the ranch for her, and managed such stock for her as he had been doing for years before the execution of the deed. The theory of plaintiff's case, as disclosed by the amended complaint upon which the action was tried, was that defendant procured the execution of the deed by her by falsely and fraudulently representing

to her that the same was the conveyance from Luis Arellanes of his portion of the rancho, which it was necessary for her to sign as the wife of said Luis, and that she did not discover the contrary until about February 20, 1903, when she was informed thereof by one Quintero in the city of Santa Barbara.

Defendant by his answer denied the allegation of said complaint in this behalf, alleging that by such deed plaintiff intended to give, grant, and convey her said property to him. Various questions relating to the issue thus made were submitted to an advisory jury. Although the jury found that the plaintiff understood what land she owned in the rancho, and that the attorney who drew the deed and witnessed its execution translated and explained the contents thereof to plaintiff before it was signed, it answered the other questions favorably to plaintiff's contention. The trial court refused to adopt these findings of the jury, and found explicitly that defendant had never taken advantage of the trust and confidence reposed in him by plaintiff, had never made any such representation as was alleged, or any false or fraudulent representation, or any request that plaintiff sign any paper as the wife of Luis Arellanes; that plaintiff, after consultation with her husband regarding his proposed conveyance, voluntarily offered to give her portion of the rancho to defendant, and requested him to consult with an attorney regarding the making of the transfer; that it was upon the advice of said attorney that the nominal consideration of one dollar was stated in plaintiff's deed; that said attorney, having prepared the respective deeds for the plaintiff and her husband to execute, plaintiff, her husband, and defendant went to the office of the attorney, whereupon the two deeds were fully translated and explained to both plaintiff and her husband; that the husband alone executed the deed to his portion, and that thereupon the plaintiff, with full knowledge of its contents, signed, executed, and delivered to defendant the deed of her portion, having, prior to delivery, duly acknowledged such execution before a notary public. It was further found that the plaintiff well knew and understood that she was executing to defendant a deed conveying her portion of the ranch, and intended thereby to give, grant, and convey to him all her interest therein, and that defendant thereupon entered into possession of the same under said deed, and has ever since continued in such possession, claiming to

own the same under the deed, paying all taxes thereon and exercising all the ordinary acts of ownership. There was no intimation in the complaint of any undue influence exerted by defendant in the matter of the execution of the deed, plaintiff's case being based upon the alleged false representations and lack of knowledge as to the nature of the instrument executed by her.

We take the findings as establishing an absolute gift of this land by plaintiff to her son, made freely and voluntarily in the execution of a purpose conceived by her to so dispose of the property, without the exercise of any fraud on the part of the son, and with full understanding on her part of all the facts and the effect of such a transfer. It is unnecessary to cite authorities to the proposition that such a gift so made cannot be set aside at the instance of the donor, and we do not understand counsel for plaintiff to claim otherwise. Their claim necessarily is that the findings in this respect are not sustained by the evidence.

As appears from the opinion of the trial court, filed in rendering the decision in this case, the learned judge in his consideration of the evidence was guided by the views declared in *Soberanes* v. *Soberanes,* 97 Cal. 140, [31 Pac. 910], in the following language: "Transactions like the one under consideration are watched by courts of equity with the most scrutinizing jealousy, and are generally held to be presumptively void. They will be set aside upon the discovery of the least fraud, and every presumption ought to be indulged against them. The person who makes the donation and bestows the confidence is not bound to show that any imposition has been practiced upon him. It is sufficient for him to establish intimate and confidential relations with the donee. . . . Where the parent is of great age, or is enfeebled by disease, and conveys his entire estate to one child, to the exclusion of other children dependent upon his bounty, the burden is unquestionably upon the donee to show that the gift was made freely and voluntarily, and with full knowledge of all the facts, and with perfect understanding of the effect of the transfer."

This states the law as favorably for plaintiff as is possible under the authorities. After quoting this language from the opinion in *Soberanes* v. *Soberanes,* 97 Cal. 140, [31 Pac. 910], the learned judge said: "In this case, the relation of mother

and son under the circumstances of that case created such a confidential relation, independent of the power of attorney; and the latter, in itself, created such a relation between plaintiff and defendant. My decision in this case is based upon the opinion that the defendant has met the foregoing burden on the question of the execution and delivery of the deed here in question.'' We have carefully examined the record and are unable to see any ground for here holding that the trial court was not warranted by the evidence in so concluding, and in making the findings assailed.

As is frequently done by the party assailing the findings of a trial court, the attempt is made to dispose of certain evidence supporting the findings by stating reasons why it should not have been accepted by the court as true. The reasons so stated as to the positive evidence given by the defendant relating to the transaction assailed in this case may have been worthy of, and doubtless received, serious consideration at the hands of the trial court. It should not, however, be necessary to here state that the amount of credit to be given to the positive testimony of any witness is solely a question for the trial tribunal, except, perhaps, where the testimony, in the light of the undisputed facts, is inherently so improbable and impossible of belief as to, in effect, constitute no evidence at all. (See *Fowden* v. *Pacific Coast S. S. Co.*, 149 Cal. 151, [86 Pac. 178, 182].) It certainly cannot be said that defendant's testimony was of such a nature as to be placed in the category last mentioned. Much reliance is placed, in this connection, upon letters written by plaintiff to defendant, and by defendant to plaintiff, which, it is asserted, show claims by plaintiff, and admissions by defendant, to the effect that he was simply holding this land for her, and was accountable to her for the profits. We do not so read this correspondence. There is nothing therein which, to our minds, is inconsistent with the claim made by defendant. It is true that she frequently asked him for small amounts of money to meet her needs as they arose, but there was nothing in her letters to indicate that she did this other than as a mother who had the right to expect that a dutiful and affectionate son, to whom she had given so much, would desire to make her comfortable in her old age. He frequently complied with her requests, always apparently to the best of his ability, and his letters indicated a commendable desire on

his part to keep her from want, but we cannot construe them as showing any admission on his part to the effect that plaintiff had any interest in the land.

There is much in the record, including the evidence of disinterested witnesses as to statements made by plaintiff shortly after the execution of the deed, to corroborate the defendant's testimony. It would, however, unnecessarily extend this opinion to set forth the various facts and circumstances shown by the record tending to that end, and it must suffice to state, as has already been said, that the case made was such as to fully support the conclusions of the trial court evidenced by the findings under consideration.

Certain evidence of defendant relied on by plaintiff as showing that defendant held the land upon some understanding that he would give to plaintiff the profits thereof, referred to a time anterior to the execution of the deed, and other evidence given by him as to what plaintiff said in proposing to give him the land, fails to show any understanding on the part of either that plaintiff was to be supported therefrom.

The trial court, in deciding the case, undoubtedly had the right to find contrary to answers given by the jury to certain questions submitted to it. In actions of this character a party is not entitled to a jury as a matter of right, and if a jury be called in it simply acts in an advisory capacity, the court being compelled to make findings of its own, and in so doing it is free to adopt or reject the findings of the jury as it deems proper. In determining whether the findings of the trial court are sustained by the evidence it is immaterial that such findings are contrary to the findings of the jury.

Of the many alleged errors in the matters of the reception and rejection of evidence but few require mention.

The objections to questions asked two of the other children of plaintiff, as to whether their father had left any estate to them when he died, were properly sustained. The father did not die until some years after the execution of the deed by plaintiff. It was undisputed that the father conveyed practically all his property to defendant in 1881 in consideration of three thousand dollars.

There was no prejudicial error in sustaining the objection to the question asked a daughter as to whether her mother gave her any portion of her land at any time, for there was

CLI Cal.—29

no dispute whatever as to the fact that, by the deed here assailed, she gave practically all her property to the defendant.

The objection on the ground of immateriality to the questions asked the same daughter as to her financial condition *since* the year 1881 were properly sustained.

The other son, Guillermo, was asked as to what property he owned at the time of the execution of the deed by plaintiff to defendant, and an objection thereto was sustained. Assuming this to have been a proper question, we cannot conceive that defendant's right was prejudically affected by the ruling under the circumstances of this case. The matter was one of very little importance, and we think the record otherwise shows that this brother had little if any property.

A witness who drew and witnessed the execution of a deed by plaintiff in 1895, which contained a recital to the effect that the only property she then owned was the property thereby granted, being the Santa Barbara lot, over objection that he had not shown himself competent to testify on this point, stated that he then found her to be in a perfectly rational condition, and that her mind was clear. This answer was substantially simply that she then appeared to be rational, a matter as to which any witness to a transaction is competent to testify. (*People* v. *Manoogian,* 141 Cal. 592, 595, [75 Pac. 177].) The question asked the witness Eduardo Arellanes upon the same subject was substantially only a question as to her appearance at this time.

We cannot hold that the court erred in refusing to strike out the answer to one of the settled interrogatories in the deposition of the witness Kaiser. The answer was strictly responsive to the question, and no objection had been interposed before the reading of the answer. Plaintiff, by allowing the answer to be read without objection, waived the right to object after the reading of the answer.

We have examined each of the other alleged errors in rulings on evidence, but find nothing of sufficient importance to warrant discussion.

There was no failure to find upon any material issue.

The case appears to us to have been fairly tried, and the record shows no prejudicial error.

The judgment and order are affirmed.

Shaw, J., and Sloss, J., concurred.