[Civ. No. 667. Fourth Appellate District.—January 26, 1933.]

ELIZABETH O'GRADY, an Incompetent, etc., Appellant, v. HARRY O'GRADY, Respondent.

238

Alva D. McGuire for Appellant.

Jesse L. Morain for Respondent.

MARKS, J.—This is an appeal from a judgment entered after granting respondent's motion for a nonsuit. Appellant has also attempted to appeal from an order denying her motion for new trial.

Elizabeth O'Grady is the mother of Harry O'Grady, who had several brothers and sisters. Grace Evans, a daughter of Mrs. O'Grady, was appointed guardian of her person and estate on April 13, 1931, she qualifying the next day. The only other information we have of the contents of the order appointing the guardian is the allegation of the complaint that the court "adjudged said plaintiff (Elizabeth O'Grady) to be incompetent".

The complaint seeks to cancel a deed dated August 30, 1930, from Elizabeth O'Grady to Harry O'Grady, conveying to him a house and three lots in Perris, Riverside County, and to recover the sum of $725 alleged to have been paid to him. While the complaint is not artistically drawn, we believe that in the absence of an exception to the sufficiency of the pleading in the trial court, its allegations are sufficient to sustain a recovery on two grounds: Undue influence on the part of the defendant and mental incompetency on the part of Mrs. O'Grady.

█ The motion for nonsuit made at the close of the plaintiff's case admits the truth and full probative value of all of the material and competent evidence and all reasonable inferences to be drawn from it and presumptions fairly arising from it. Evidence contradicting evidence favorable to the plaintiff must be disregarded.

"Judges are no longer required to submit a case to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character (as) that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. Therefore, to avoid a nonsuit, the evidence of the plaintiff must be sufficient to raise more than a mere surmise or conjecture that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists. The court may grant the motion when, viewing the evidence of the plaintiff in its most favorable aspect for him, it is of the opinion that the evidence will not support a verdict in his favor, or where the evidence does not establish a *prima facie* case." (9 Cal. Jur., p. 557.)

Mrs. O'Grady was over the age of eighty years at the time of the transaction in question. She was not educated and could not write her own name. She tended to her own small business affairs except when prevented from doing so by physical injuries resulting from accidents. The witnesses are practically unanimous in the view that her mental condition had not changed in a number of years before August 12, 1930. While the evidence shows that Mrs. O'Grady was easily influenced and often swayed by the wishes of her children, it falls far short of indicating the lack of capacity necessary to invalidate her acts on the ground of mental incompetency. Her mental condition becomes important only in connection with the charges of undue influence against her son.

Mrs. O'Grady lived on the property in question in Perris. Her son Harry and his wife lived across the street and cared for her during two illnesses following accidents, except during the time spent by her in a hospital. Her other children lived at greater distances from her and did not see her so frequently. For a number of months prior to the execution of the deed in question Mrs. O'Grady reposed her confidence in Harry and had him tend to her affairs. She was then incapacitated physically by reason of an accident. He seemed to be her business adviser during this time.

Mrs. O'Grady had made other deeds to her property. About five years before the trial she made a deed to her

son Gus, about two years later to her daughter Kate, and about one year later to her daughter Grace, her present guardian. These three deeds were each left with a bank by Mrs. O'Grady and subsequently withdrawn by her.

Mr. Clifford R. Stewart, a banker of Perris, was the only witness called who was present when the deed to Harry was executed. He gave the following account of the happening: "Q. Are you acquainted with Elizabeth O'Grady? A. Yes. Q. And with her guardian, Grace Evans? A. Yes. Q. And with Harry O'Grady, the defendant? A. Yes. Q. And how long have you known them? A. I have known them practically since I have been in Perris, about 20 years. Q. Are you acquainted with the whole family? A. Yes, sir. Q. Now, did you have occasion to be present on or about the 12th day of August of 1930, when Elizabeth O'Grady executed a deed to certain property to Harry O'Grady? A. Yes. Q. And where was that instrument signed? A. Signed in Mrs. O'Grady's home. Q. Mrs. Elizabeth O'Grady? A. Yes, sir. Q. Who was present, Mr. Stewart? A. My father and my wife, and I think also Mrs. Harry O'Grady came in before the transaction was completed. A. And what was Mrs. O'Grady's physical condition at that time? A. Why, she was incapacitated in regard to a fall that she got in her home, as I understand it. Q. You were asked to come to her home to witness the execution of a deed? A. Yes, sir. Q. Who asked you to do so? A. I think it was Harry O'Grady asked us to come down. . . . The Court: I think the witness can testify, if he had occasion to observe Mrs. O'Grady on that day, he can testify as to her mental condition as he observed it. A. It appeared to me that Mrs. O'Grady has been in the same mental condition for the past several years. I think right now she is in the same condition. She knows what she is doing when things are explained to her, and she understands, too, only different ones of her children could influence her to do anything that they wished. That is my personal opinion. Q. You mean by that, that most any one of the children could influence her? A. Yes. Q. Your opinion is that the one who might talk to her last would probably be the one that would influence her to do anything at that time? A. Yes, sir. Q. And you base that upon the long contact you have had with them in a business way and

through the bank? A. Yes, sir. I have seen her children at different times that wanted things, and they would ask Mrs. O'Grady, and she would usually give it to them if she had it. . . . Q. At that time did Mrs. O'Grady say why she was deeding her property? A. She said she wanted to leave her property to Harry O'Grady. Q. Did she state at that time why? A. Well, as I understood it, Harry O'Grady was having charge of her affairs, and was going to take care of her funds. . . . Q. I will show you the deed here, Mr. Stewart, and ask you if that is the deed you refer to (showing to witness)? A. Yes, sir; that is the deed I refer to. Q. That is your signature, and your wife's signature? A. Yes, sir. Q. And the acknowledgment here, 'W. W. Stewart' is your father? A. Yes, sir, 'Notary Public.' . . . Q. When was the last time you have spoken to Mrs. Elizabeth O'Grady? A. Yesterday morning. Q. Was her conversation rational? A. Yes, sir; I met her in the grocery store yesterday morning, and she seemed to be perfectly rational. Q. Has she always appeared to you, from the time you have known her, in the same condition of mind? A. Yes, sir. . . . The Court: Mr. Stewart, at the time Mrs. O'Grady executed the deed in question here, in your opinion, did she know what she was doing? A. Yes, sir.''

George O'Grady had a conversation with his mother several months after she executed the deed to Harry, which he described as follows: ''. . . I got to talking with her, and she told me she signed the paper. I asked her what kind of a paper, and she said a paper for the place. That is as far as she knew what she signed. If she signed anything, I have not seen any of them. Q. Did she tell you at that time why she had signed the paper to Harry? A. I asked her what was her idea in doing that, and she said she had signed two or three deeds to the other children,— my brothers and sisters, of course—and she was going to try Harry this time.''

In considering the question of undue influence of Harry over his mother in obtaining a deed to all her property, we must bear in mind: 1. That the judgment rendered was upon a motion for nonsuit where the evidence, in favor of the plaintiff, must be taken as true and construed most strongly in her favor; 2. That a confidential relation

of trust and confidence existed between Mrs. O'Grady and her son Harry; 3. That she was of very advanced years, physically incapacitated, uneducated and easily influenced by any of her children; 4. That Harry was at the time her business adviser; 5. That he received a deed to all her property without other consideration than love and affection and subsequently recorded it; 6. That thereafter he moved from Perris, taking with him linoleum from the floor of the house and part of his mother's dishes and bedding, leaving insufficient for her use so that the guardian, when appointed, had to replace the articles taken; 7. That the notary who prepared the deed and the witnesses to the mark of Mrs. O'Grady were procured by Harry; 8. That Mrs. O'Grady had no independent advice in the transaction.

We think the facts of this case bring it within the rule announced in *Soberanes* v. *Soberanes,* 97 Cal. 140 [31 Pac. 910, 912], as follows: "There is no doubt as to the principle applicable to cases of this kind. Transactions like the one under consideration are watched by courts of equity with the most scrutinizing jealousy, and are generally held to be presumptively void. They will be set aside upon the discovery of the least fraud, and every presumption ought to be indulged against them. The person who makes the donation and bestows the confidence is not bound to show that any imposition has been practiced upon him. It is sufficient for him to establish intimate and confidential relations with the donee. Some of the cases hold that undue influence is not to be inferred from the relation of parent and child, where the gift is from the parent to the child (*Millican* v. *Millican,* 24 Tex. 446); but where the parent is of great age, or is enfeebled by disease, and conveys his entire estate to one child, to the exclusion of other children dependent upon his bounty, the burden is unquestionably upon the donee to show that the gift was made freely and voluntarily and with full knowledge of all the facts, and with perfect understanding of the effect of the transfer."

The trial court should not have granted the motion for a nonsuit under the facts in the record before us.

The attempted appeal from the order denying the motion for new trial is dismissed.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.