[Civ. No. 4609.   Fourth Dist.   May 21, 1953.]

REGINALD C. STONER, Respondent, v. VIOLA S. LAIDLEY et al., Defendants; ELLA STARK STONER, Appellant.

Hancock, Elkington & Rothert and Harlow P. Rothert for Appellant.

Johnston, Baker & Palmer for Respondent.

BARNARD, P. J.—This is an action to quiet title to four parcels of real property in Bakersfield. The defendant Ella Stark Stoner is the mother of the plaintiff, and will be referred to as the defendant. L. K. Stoner is his brother, the defendant Viola S. Laidley is his sister, and the defendant Mary Ella Lenahan is his niece, the daughter of Mrs. Laidley. Mrs. Laidley's husband was a lawyer.

The four parcels, which are referred to as the "cottage property," the "home property," the "store property" and the "other property" were formerly owned by the defendant. She conveyed the "cottage property" to the plaintiff by a deed dated October 28, 1921, which was recorded on March 8, 1933. She conveyed the "home property" to the plaintiff by a deed dated July 27, 1932, and recorded August 22, 1932. She executed a deed dated September 16, 1924, conveying the "store property" to the plaintiff and to his brother and sister, L. K. Stoner and Mrs. Laidley. This deed was not recorded until March 8, 1933. The defendant conveyed the "other property" to her three children by deed dated July 3, 1933, and recorded July 6, 1933. Subsequently, Mrs. Laidley and L. K. Stoner sold and conveyed their interests in this property to the plaintiff. Mrs. Laidley conveyed her interest in the "store property" to the plaintiff in 1937, and L. K. Stoner conveyed his interest to the plaintiff in 1940. A trust deed on the "store property" was foreclosed in 1937, and the plaintiff purchased it at the trustees' sale and received deeds conveying that title to him.

This action was brought on December 6, 1949, and was tried in May, 1951, at which time the defendant was 88 years old. The brother and sister and Mrs. Lenahan, who had been appointed as guardian of the defendant, filed disclaimers. An order restoring the defendant to capacity was entered on March 10, 1950, and thereafter she filed an answer and a cross-complaint in which she asked to have it declared that the plaintiff holds these properties in trust for her, sought an accounting of rents and profits, and asked to have title to the properties quieted in her. The court's findings, after a lengthy trial, were in favor of the plaintiff and he was given a judgment quieting title to the properties in him, from which the defendant has appealed.

With respect to the "cottage property," the court found that in October, 1921, the defendant executed and delivered to the plaintiff a gift deed conveying that property to him;

that this deed was delivered by the plaintiff to L. K. Stoner for safekeeping; that early in the year 1933, this deed could not be located and the defendant had her son-in-law, W. W. Laidley, prepare another deed which was delivered to the plaintiff; that the original deed was later found and recorded; and that since October 28, 1921, the plaintiff has been and is the owner of that property.

With respect to the "home property," the court found that on July 27, 1932, the defendant sold and conveyed it. to the plaintiff for a valuable consideration; that the consideration was that the plaintiff assumed a lien indebtedness on the property of $10,000, with interest, owed to the Bank of America, assumed an additional $1,900 on unsecured notes owed by the defendant to said bank, and agreed to allow L. K. Stoner to occupy the property without rent for a certain period of time; that plaintiff paid off these debts and allowed the brother to occupy the property for said period; that the defendant did not execute this deed until after she had consulted her attorney, W. W. Laidley, who advised her on all legal and business matters in connection with her property; that Mr. Laidley prepared this deed and it was acknowledged before a notary in his office; that the defendant personally delivered this deed to the plaintiff; and that since August 22, 1932, the plaintiff has been and now is the owner of this property.

With respect to the "store property," the court found that on September 16, 1924, the defendant executed a gift deed naming Mrs. Laidley, L. K. Stoner and the plaintiff as grantees; that this deed was delivered to L. K. Stoner with instructions that it was to be held by him and recorded upon the death of the defendant; that in February, 1933, Mr. Laidley, the business and legal adviser of the defendant, advised her that she should have L. K. Stoner deliver the deed to the plaintiff for recording; that, thereafter, the defendant wrote a letter to L. K. Stoner requesting him to deliver the deed to the plaintiff, and also requested the plaintiff to obtain the deed from his brother and record it as she desired to give the property to her children immediately; that the deed was then delivered to the plaintiff as requested by the defendant, and was recorded; that, in February, 1937, Mrs. Laidley sold and conveyed her one-third interest in this property to the plaintiff for $4,000; that this fact was known to the defendant a short time thereafter; that, in 1940, the plaintiff purchased from L. K. Stoner his one-third

interest in this property for the sum of $5,632.29; that shortly thereafter the defendant was advised of said sale and transfer; that at the time the deed conveying the property to the three children was recorded the property was encumbered by a trust deed for over $20,000 for money which the defendant had borrowed, and there was an attachment against the property on a claim of John Deere Plow Company against the defendant in excess of $16,000; that this claim was later adjusted and settled; that by reason of this attachment and other defects in the title this property could not be refinanced but was sold under said deed of trust, and the plaintiff purchased the property at the trustees' sale; that prior to and after the said trustees' sale the defendant was fully advised by the plaintiff and L. K. Stoner regarding all of the transactions, and other matters in connection with the sale under this trust deed; that since the delivery of the deed to this property to the plaintiff in March, 1933, and its recordation as requested by the defendant, the defendant has not been the owner of this property or any part thereof; and that since the conveyance to the plaintiff by his brother and sister of their interests in this property the plaintiff has been the owner of all of said property.

With respect to the "other property" the court found that on July 3, 1933, the defendant executed and delivered a deed conveying this property to her three children, the plaintiff, Mrs. Laidley and L. K. Stoner; that the defendant executed this deed after she received advice from W. W. Laidley, who was acting as her business and legal adviser upon all matters and from parties other than the plaintiff; that Mrs. Laidley and L. K. Stoner later conveyed their interests in this property to the plaintiff, and that the plaintiff paid each of them $200 for their respective interests; and that since February 21, 1939, the plaintiff has been and now is the sole owner of this property. .

It was further found that at the time it was conveyed the "cottage property" was worth not to exceed $7,500, the "home property" not to exceed $13,000, the "store property" not to exceed $37,000, and the "other property" not to exceed $600; that at all times here involved there had been a confidential relationship between the defendant and her three children; that she was not advised by and did not rely upon the advice of the plaintiff in any matter pertaining to her business and her property; that during the period in ques-

tion she was advised by and relied upon the advice of W. W. Laidley in all legal matters, and was advised by and relied upon the advice of Mrs. Laidley and Mr. Laidley and other persons upon all matters relating to her business and property; that the plaintiff did not, during the years 1930 to 1932, or at any other time, advise the defendant that because of the existing depression and the encumbrances the real property belonging to her was in a precarious condition and might be lost through foreclosure, or tell her that if she gave him the complete control and legal title to the property he would hold the title for her, would prevent any foreclosure and would manage it for her benefit; that it is not true that in 1937 the plaintiff, without defendant's knowledge or consent and with intent to personally profit thereby, allowed the "store property" to be foreclosed by the holder of the trust deed; that it is not true that the plaintiff, in December, 1949, repudiated an agreement to hold title to said real property and to manage it for the benefit of the defendant; and that it is true that the plaintiff never agreed to hold title to any of the real property mentioned in the findings for the defendant or to manage it for her benefit.

It was further found that the defendant's several causes of action, as set forth in the cross-complaint, are each barred by certain statutes of limitation; that each of said causes of action are further barred by laches in that the defendant, between the years 1933 and 1949 has never claimed any interest in these properties, and that since 1937 she has had full knowledge that the plaintiff had purchased the interests of his brother and sister in the "store property"; that she knew that the plaintiff was required to borrow money in order to purchase the store property when it was sold under the trust deed; that she knew that it was necessary for said property to be sold under the trust deed due to liens and other clouds on the title to the property, which were caused by the defendant and parties other than the plaintiff; that she had full and complete knowledge of each and every one of these transactions and did not object to the same, or at any time claim that she was the owner of said property or had any interest therein; that during this period she stated to the plaintiff and others that the plaintiff was the owner of these properties; that during the years 1932 and 1933 and thereafter she knew that the plaintiff was paying off all debts on the "home property" and had fully performed the other considerations which he had agreed to perform in that regard;

and that she also had knowledge that the plaintiff was expending large sums of his own money to repair and improve the properties, and during this entire period she did not object thereto nor claim that she had any interest in the property until December 1, 1949.

The defendant relies on the rule that where a confidential relation existed between the parties, and property is transferred without consideration, a presumption of fraud and undue influence arises which shifts the burden of proof to the grantee to show fairness and good faith in the transaction, that the grantor had a full understanding of the situation, and that the grantor acted upon independent advice in making the transfer. (*Sparks* v. *Mendoza*, 83 Cal.App.2d 511 [189 P.2d 43]; *Hatch* v. *Penzner*, 44 Cal.App.2d 874 [113 P.2d 295]; *Estate of McConkey*, 33 Cal.App.2d 554 [92 P.2d 456]; *Campbell* v. *Genshlea*, 180 Cal. 213 [180 P. 336]; *Soberanes* v. *Soberanes*, 97 Cal. 140 [31 P. 910].) It is argued that the court found that a confidential relation existed here; that there was no consideration for these transfers; and that there are neither findings nor evidence to show that these transfers were fair to the defendant, that she had a full understanding of them, or that she had received independent advice.

While the court found that a confidential relationship existed, it also found in effect that the plaintiff had used no undue influence. It found that the defendant was not advised by the plaintiff, and that she relied and acted upon the advice of other members of her family, including her son-in-law who was a lawyer. These findings are supported by the evidence. The plaintiff was in Mexico from 1921 to 1930, and was away from the family on his own business most of the time from 1930 to 1933. L. K. Stoner had for years been operating a store in the "store property," as manager for the defendant. The store was closed about 1932 because of financial difficulties. The plaintiff was called in because an imminent danger of losing the properties existed. It may well be that the defendant preferred to save the property for the children rather than to have it taken by the creditors. It does not certainly appear, however, that she intended to save the properties for herself, or that she made any agreement with the plaintiff for that purpose. In *Taylor* v. *Bunnell*, 211 Cal. 601 [296 P. 288], it was held that after the showing of a confidential relationship the burden was still on the plaintiff

to prove that the deed was not what it purported on its face to be, and to show that the facts surrounding the transaction were sufficient to establish a constructive trust. The court there said: ''The rule is also well established that to prove a trust by parol under a conveyance absolute in its terms the evidence must be clear, satisfactory and convincing.''

An ample consideration existed here within the meaning of the rule relied on by the defendant. About 1920, the defendant had told each of her children that she would give them some property. She gave Mrs. Laidley a house and lot, and Mrs. Laidley later sold it and used the money. She gave L. K. Stoner a house and lot and he later conveyed it to his wife as part of a property settlement. She repeatedly said she was going to give the ''cottage property'' to the plaintiff. In 1921, she executed a gift deed to that property to him, handed it to L. K. Stoner and asked him to deliver it to the plaintiff when he returned from Mexico. The plaintiff returned from Mexico for a visit in 1922 and saw his mother in Berkeley. She told him she had given him a deed to the ''cottage property'' by delivering it to his brother. When the plaintiff came to Bakersfield, L. K. Stoner took the deed from the safe and gave it to him. The plaintiff then handed the deed back and asked his brother to take care of it for him. The defendant admitted at the trial that she had given the plaintiff the ''cottage property'' because she wanted to treat him the same as she had treated the other children.

In June, 1932, the plaintiff had a talk with the defendant in Bakersfield in which she told him of the debts to the bank, $10,000 on a trust deed on the home property and $1,900 on notes, and that the bank was pressing for payment. She told him she would give him this property if he would pay off these debts, but he was unwilling to do so because he thought the property was not worth that amount. He finally agreed to do so when he found that the trust deed on the ''home property'' had been made out to include the ''cottage property,'' which had been given to him. The defendant, who lived with the Laidleys in Berkeley, said she would have her attorney prepare a deed when she returned to Berkeley. In July, 1932, she delivered to the plaintiff a deed to this property executed before a notary public in Alameda County. The plaintiff paid off the $11,900 debts to the bank, with some interest, and also spent considerable money, in carrying out his agreement with his mother, to enable L. K. Stoner to operate a business on the ''home property'' for a certain

period.  This was in legal effect a sale, as found by the court, and the plaintiff thus paid what appears to have been the full value of the property.

While the "store property" was deeded to the three children in 1924, with instructions that the deed was not to be recorded until after the defendant's death, she gave different instructions in 1933.  At that time, the holder of the trust deed for $20,000 was threatening to foreclose and the John Deere Plow Company was threatening to attach on a claim for $16,000.  This attachment was actually levied shortly after the deed to the three children was recorded.  The plaintiff was called for a conference with his mother by his brother-in-law, Laidley, and was told of the situation.  Laidley advised the defendant to give a second mortgage to the plow company.  She then stated that she wanted nothing more to do with the property and that "I have made out a deed to you children for the property.  It is yours and you can do what you want with it."  She then asked the plaintiff to go to Bakersfield and get the deed from his brother and record it as soon as possible.  Laidley said this was the thing to do.  The defendant also wrote to L. K. Stoner and asked him to deliver the deed to the plaintiff.  The plaintiff went to Bakersfield, obtained the deed and recorded it.  Four years later the trust deed on the "store property" was foreclosed and the plaintiff bought it in at the trustees' sale, having borrowed the money for this purpose.  He then paid his sister $4,000 for her one-third interest, and later paid his brother $5,600 for his interest.  There is evidence that he paid between $22,500 and $25,000 in connection with the trustees' sale, and that altogether he paid practically what the property was then worth.  In view of all of the evidence it cannot be said that an adequate consideration was not paid.

It does not appear that the plaintiff paid anything to the defendant for the "other property" which was deeded to the three children in 1933, although he later paid his brother and sister for their interests therein.  It would appear that this property was conveyed to the three children as a part of the transaction involving the "store property," as the 1933 deed to the "other property" also included the "store property," another deed to which had recently been recorded.  Some 10 years later the defendant asked L. K. Stoner what he had done with his interest in the "other property," and he told her that he had sold it to the plaintiff.

We have read the entire record which discloses that the

court's findings, to the effect that the defendant had full knowledge of all of these transactions and that she acted upon independent advice, legal and otherwise, are sufficiently supported. There is some conflict with respect to the delivery of the two deeds in 1933. The defendant testified that her two sons came to her while she was in Bakersfield, that the plaintiff said he had brought the papers she would have to sign for him to take care of things for her; that she signed them without reading them as she trusted him entirely; that he kept the papers; that she did not know who prepared the papers; that there was no discussion about the "store property" or the "cottage property"; that he was taking the business over to take care of it and save it for her; that she did not mistrust him and asked no questions; that she remembered no conversation about the plaintiff's paying the debts; that she did not tell the plaintiff to record the deed to the "store property"; and that she did not know that the plaintiff had bought that property at the foreclosure sale until he told her in 1949. There is a great deal of conflicting evidence given by the plaintiff and by L. K. Stoner, and also in many written instruments concerning which the defendant could remember nothing. Nothing more than a conflict appears, at best, and the evidence as a whole strongly supports the findings made.

The defendant further contends that the finding that her claims are barred by various statutes of limitation is unsupported by the evidence. It is argued that a continuous trust here existed, that the statutes did not begin to run until a repudiation of the trust was brought home to the beneficiary, and that this was not done and the defendant had no knowledge that the plaintiff claimed to own the property until sometime in December, 1948. This contention rests upon a conflict in the evidence, other portions of which are sufficient to sustain the finding in this regard. ■ The only other point raised is that the finding that the action was barred by laches is without support in the evidence. It is unnecessary to discuss this issue other than to say that the defendant allowed these matters to rest without objections for many years after the transactions occurred, and until after three important witnesses were dead, when the facts and circumstances strongly indicate that she knew that the plaintiff was claiming title to the properties.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.