[L. A. No. 6519. In Bank.—March 31, 1922.]

## HENRY C. MAGEE, Appellant, v. CLAYTON B. BRENNEMAN et al., Respondents.

[1] MORTGAGES — ATTORNEY'S FEES — RELATION OF ATTORNEY AND CLIENT—EVIDENCE.—In this action to foreclose a mortgage given to secure a promissory note for attorney's fees, where the defense was lack of consideration and undue influence, it is held that the evidence supports the finding that the relationship of attorney and client existed between the parties at the time of the transaction in question.

[2] ATTORNEY AND CLIENT — EMPLOYMENT OF ATTORNEY IN REPRESENTATIVE CAPACITY—PROTECTION BY RELATIONSHIP.—Although an attorney is employed by one acting as administrator of an estate, the latter as an individual is entitled to the protection afforded by the relationship of attorney and client. Section 2235 of the Civil Code applies to all cases of attorney and client, where any contract is made whereby the attorney receives an advantage.

[3] ID.—FIDUCIARY RELATIONS—FAIRNESS OF TRANSACTION—PRESUMPTIONS—BURDEN OF PROOF.—The relation of attorney and client is of a fiduciary character and all transactions between them during the existence of the relationship by which the attorney obtains any advantage from the client are presumed to be entered into without sufficient consideration and under undue influence, and the burden is on the attorney of showing that the transaction was fair.

[4] ID. — ADVANTAGE TO ATTORNEY — RECEIVING SECURED FOR UNSECURED NOTE — EXECUTION AT REQUEST OF ATTORNEY—BURDEN

---

4. Burden of proof of good faith of transaction in case of assignment or conveyance by client to attorney, notes, 18 Ann. Cas. 123; Ann. Cas. 1918E, 1159.

OF PROOF.—Where an attorney procures a note signed by a husband and wife, secured by property shown to be worth about fifty thousand dollars, in exchange for an unsecured note for ten thousand dollars signed by the husband alone, the attorney obtains an advantage, and where the transaction was carried out at the attorney's request, it devolved upon him to show that the transaction was fair and regular and was entered into by the clients with a full knowledge of the facts, and the burden was on the clients to show that they had suffered damage as a result of undue influence.

[5] ID.—NOTE EXECUTED WITHOUT CONSIDERATION AND UNDER UNDUE INFLUENCE—SUFFICIENCY OF EVIDENCE.—In this action to foreclose a mortgage given as security for a promissory note for attorney's fees it is held that the evidence was sufficient to sustain the findings that the amount of the attorney's fee was not reasonable and that the note and mortgage were not made freely and voluntarily.

[6] ID. — VOIDABLE CONTRACT — POWER OF COURT TO FIND VALUE OF SERVICES.—In such a case, where the presumption that the note and mortgage were executed under undue influence was not rebutted, the contract was voidable at the instance of the clients, and the court had the right to determine what a reasonable fee for the services performed was.

[7] ID.—RATIFICATION.—In such a case payments made by the clients on principal and interest of the note did not effect ratification of the note and mortgage, where the court found, upon sufficient evidence, that the payments were not made freely and voluntarily, but under undue influence.

[8] ID. — FRAUD — DEFENSE — STATUTE OF LIMITATIONS — LACHES.— In such a case neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is allowed to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense.

APPEAL from a judgment of the Superior Court of Riverside County.   Wm. D. Dehy, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Kemp, Mitchell & Silberberg, Miguel Estudillo, Alex W. Davis and Walter C. Davison for Appellant.

Fredericks & Hanna and Harold C. Morton for Respondents.

LAWLOR, J.—This is an appeal by the plaintiff, Henry C. Magee, from a judgment in favor of the defendants Clayton B. Brenneman and Frilletta G. Brenneman, his wife, in an action tried by the court, sitting without a jury, to foreclose a mortgage given by the said two defendants to secure a promissory note for $10,000 executed by the said parties in favor of appellant's assignor, one Miguel Estudillo. It was found that certain fictitious persons, joined as defendants, were not served with complaint or summons, and were found to have no interest in the property.

It appears that on July 18, 1911, the said Miguel Estudillo, who is an attorney, was retained by Brenneman to represent him in securing letters of administration upon the estate of his mother, Rebecca E. Brenneman, deceased, and thereafter, on July 21, 1911, to represent him in contesting a purported will of the deceased. For several years before this time Estudillo had acted as Brenneman's attorney in various legal proceedings. The contest of the will was successful and as a result Brenneman as heir obtained about $63,000 from the estate instead of a $5,000 legacy which he would have received under the purported will. Estudillo acted as Brenneman's attorney in the matter until the latter's discharge as administrator on August 1, 1913, and it was shown that for some time after this he continued to handle legal matters for him.

Before the trial of the will contest, Brenneman paid Estudillo $1,500 as a retainer fee. After the trial and on June 12, 1912, he paid him $5,000 more and gave him his promissory note in the sum of $10,000, to run for one year. The evidence as to what the agreement was with regard to the fee at the time Estudillo was engaged is involved in conflict. Estudillo testified that Brenneman agreed to give him half the amount recovered in the suit to contest the will. Brenneman testified there was no amount agreed upon until the $5,000 was paid and the note given. Both parties testified that the $6,500 in cash and the promissory note for $10,000 constituted the entire fee for the services in contesting the will.

On May 31, 1913, at Estudillo's request, the respondents executed a note and mortgage in favor of Estudillo in the sum of $10,000, which was given to Estudillo in exchange for Brenneman's note of June 12, 1912. This note and

mortgage of May 31, 1913, was assigned to the plaintiff and is the one upon which this action is brought. The respondents have paid $4,000 on the principal and $1,080 interest upon the said note and mortgage and in their answer contest plaintiff's claim for the remaining $6,000 upon the grounds that they executed the note and mortgage "in form only"; that there was no consideration for its execution; that its execution was not the voluntary act of the respondents, but was brought about by the demand, the threatening attitude of Estudillo and the feeling of terror and bewilderment which these acts inspired in respondents. It was also alleged that the note of June 12, 1912, was executed by reason of Brenneman's belief in Estudillo's honesty, integrity, and good faith; by reason of Brenneman's weak mental condition; and by reason of the importunities and request of Estudillo and the relation of confidence existing between them at that time; that they had paid Estudillo in all the sum of $13,185 for his services in connection with the contest of the will; that $7,500 would be a reasonable fee for such services; and that any sum in excess of that amount would be oppressive, unconscionable, and exorbitant. The defendants do not seek the recovery of the amount they have paid beyond what is alleged to be a reasonable fee.

The court made findings of fact and conclusions of law and decreed that the note and mortgage be declared null and void and that plaintiff take nothing by his action. Judgment was entered in favor of the respondents, and from that judgment this appeal is taken.

1. Appellant contends certain findings of the court are unsupported by the evidence. These findings are to the effect that the note and mortgage were executed by respondents without any consideration; that for many years prior to the execution of the note and mortgage Estudillo had been continuously acting as attorney for both respondents in various matters; that on May 31, 1913, and for a long time prior thereto, Estudillo was the attorney and confidential adviser of respondents; that they reposed implicit confidence in him and in all matters acted as he advised them; that Estudillo continued to act as attorney for respondent Clayton B. Brenneman in the matter of the estate after May 31, 1913; that on May 31, 1913, and subsequent

thereto, respondent Frilletta G. Brenneman was weak and feeble mentally and unable to withstand the importunity of a person of normal mentality; that Frilletta G. Brenneman was unsophisticated in the knowledge of business transactions; that respondents did not have sufficient mentality to realize the consequences of making payments upon the principal and interest of the note and mortgage, or of delaying objections to the note and mortgage; that the payments on principal and interest were not made voluntarily, but by reason of the influence exercised by Estudillo, and while Estudillo was their attorney; that neither Estudillo nor appellant has been injured by the delay of respondents in questioning the validity of the note and mortgage; that Estudillo appeared before the board of supervisors, sitting as a board of equalization, in behalf of respondents, in 1917; that the sum of $11,580 paid to Estudillo is ample compensation for the reasonable value of his services in the matter of the will contest, and that any sum in excess of that amount would be unreasonable, oppressive, and exorbitant.

The further contentions are made that by making payments on the note and mortgage after the relation of attorney and client had ceased, respondents ratified the contract; that respondents have been guilty of laches; that the court had no authority to determine what was a reasonable sum for the services Estudillo rendered; and that certain findings are in conflict and are insufficient to support the judgment.

[1] The finding that the relationship of attorney and client existed between Estudillo and respondents on May 31, 1913, on which day the note and mortgage were given, is sufficiently supported by the evidence. At that time Brenneman was still acting as administrator of his mother's estate, and Estudillo represented him in that capacity. Estudillo testified he procured Brenneman's final discharge as administrator of his mother's estate; that he represented Brenneman in other matters, and that he drew the wills of both respondents subsequent to May 31, 1913. Brenneman testified he went to see Estudillo from time to time on legal business after May 31, 1913, and that Estudillo acted as his attorney in various matters all during the time up to January 15, 1915. Appellant particularly in-

sists the evidence does not show that Estudillo was Mrs. Brenneman's attorney. Respondents do not question this but claim the finding is immaterial. However, Mrs. Brenneman testified on cross-examination, in response to questions as to whether she had any business of her own with Estudillo prior to May 31, 1913, that she "had a little business with him when my sister died." In view of this it cannot be held the court could not have concluded that the relationship had not been terminated on that date. Apart from this, we think it clear that the testimony hereinafter referred to in connection with appellant's contention that the transaction was fair and regular would have warranted a conclusion that Mrs. Brenneman entered into the contract as the result of undue influence without regard to the relationship of attorney and client.

[2] Appellant contends respondents should not be allowed to claim the benefit of this relation of confidence, because on the particular date in question Estudillo represented Brenneman, if at all, in the latter's official capacity as administrator only. He has cited section 1616 of the Code of Civil Procedure, *Estate of Hite*, 155 Cal. 448 [101 Pac. 448], and *Malville* v. *Kappeler*, 4 Cal. Unrep. 843 [37 Pac. 934], as supporting this position. These are authorities for the rule that an attorney may be retained by a client both in an official and a private capacity and that he must look for his compensation to the client in the respective capacities, but they are not authority for the proposition that where an attorney is retained by the administrator of an estate the latter as an individual is not entitled to the protection afforded by the relation of attorney and client. Section 2235 of the Civil Code draws no such distinction, but applies to all cases of attorney and client, where any contract is made whereby the attorney receives an advantage.

[3] It having been shown that the relation of attorney and client existed between the parties, we shall next consider whether the dealings between them were fair and regular. In *Metropolis Trust & Sav. Bank* v. *Monnier*, 169 Cal. 592, 598 [147 Pac. 265], the court declared: "The relation of attorney and client is of a fiduciary character, and the Civil Code (sec. 2235) clearly provides that all transactions between a trustee and his beneficiary during

the existence of the trust, by which he obtains any advantage from his beneficiary, 'are presumed to be entered into by the latter without sufficient consideration and under undue influence.' This does not mean that a trustee may not deal with his beneficiary. But if he does deal with him in such manner as to obtain an advantage, the trustee has the burden of showing by evidence that the transaction was fair. Certainly the obtaining of a note for $20,000.00, secured by a mortgage, is an advantage, and the attorney, or those claiming under him, cannot safely rest, as they did in this case, without affirmative proof of the facts surrounding the transaction." It is further pointed out in that case that a consideration may be shown to exist for such a note, and also that if such a note is found to have been given as a result of undue influence, it is merely voidable and not void. In *Kisling* v. *Shaw*, 33 Cal. 425 [91 Am. Dec. 644], it was held that the beneficiary in such a case must show some damage resulting to him from the transaction. The court declared in *Shirk* v. *Neible*, 156 Ind. 66 [83 Am. St. Rep. 150, 59 N. E. 281], that "these attorneys, having agreed with their client during the progress of the confidential relation as to the amount of their fee, and demanded and taken a negotiable note and mortgage therefor, the law presumes the transaction to be fraudulent, and the fee excessive, and the burden is laid upon the attorneys to show by clear proof that it was fair, and the amount agreed upon but a reasonable compensation for the services which they had performed or would be called upon to perform under their employment." In *Cole* v. *Wolfskill*, 49 Cal. App. 52 [192 Pac. 549], a physician brought suit on a note given him by a patient in payment for services rendered, and it was held that the fact that the contract was in writing was sufficient to rebut the presumption that an agreement between parties occupying a confidential relation was entered into without a sufficient consideration, the consideration being presumed from the writing. (Sec. 1614, Civ. Code.) The case of *Dimond* v. *Sanderson*, 103 Cal. 97 [37 Pac. 189], was there cited to the point that it was not sufficient to show merely that a confidential relation existed, but that it must also be shown that such a relation was used to obtain an unfair advantage. In *Dimond* v. *Sanderson, supra*, the

court said: "We think that before the presumption con-
tended for can apply it must appear that plaintiff, in ob-
taining the note sued upon, obtained some advantage over
the defendant, and that the possession of the note is not of
itself evidence that any advantage has been obtained."
The court plainly held that the contract there was not
shown to be one in which an advantage was obtained by
the party occupying the position of trust, and therefore it
did not fall within the rule of section 2235 of the Civil
Code. The case of *Cole* v. *Wolfskill, supra,* therefore, can-
not be considered authority for the proposition that the
burden of proof is shifted to the beneficiary in cases where
the attorney has received an advantage. To place the bur-
den on the beneficiary would be to put such contracts in
the same category as those between parties occupying no
relation of trust, to ignore the provisions of section 2235
of the Civil Code, and to deny this added protection to one
whose confidence has been abused.

[4] The procuring of the note signed by both respond-
ents, secured by property which the record shows to be
worth about $50,000, in exchange for an unsecured note
signed by Brenneman alone, was certainly an advantage
to Estudillo. In addition, the evidence shows that the
transaction was carried out at Estudillo's request. It
therefore, under the authorities cited above, devolved upon
appellant to show that the transaction was fair and reg-
ular and was entered into by respondents voluntarily with
a full knowledge of the facts; and upon respondents to
show that they had suffered damage as a result of the
undue influence. There can be no doubt that the fore-
closure of the mortgage involved in this suit, as well as
the payment of an excessive fee, would be damaging to
respondents. Appellant has sought to meet the burden of
proof resting upon him first by showing the amount agreed
upon was a fair, reasonable charge for the services per-
formed. The trial court concluded appellant failed to
sustain this burden. It was found the amount of the note
was more than a reasonable charge, and that the note and
mortgage "were not made, executed, or delivered freely
or voluntarily, by said defendants or either of them, but
such said note and mortgage were so made, executed and
delivered against the wish and will of said defendants, and

each of them, and by reason of the request, demand, and importunities of said Miguel Estudillo, and by reason of the power and influence of said Miguel Estudillo over said defendants, and over each of them.''

[5] We cannot say these findings are not warranted by the evidence. Expert testimony was received on the subject of the value of Estudillo's services, and under all the circumstances the court found that the sum of $11,580 was ''ample compensation for the reasonable value'' of the services he performed. Although the court might consider any fee within certain limits not to be so unreasonable as to characterize the transaction as unfair, some sum which would be a reasonable fee must necessarily be fixed as a specific amount by the judgment. The record shows Estudillo conducted the will contest with energy and diligence, but although appellant has cited cases in which as high as one-third or one-half of the property involved in the action was held to be a reasonable contingent fee, it cannot be held, upon the evidence before us, that the trial court erred in concluding that $11,580, amounting to almost a fifth of the property involved, was a reasonable compensation for contesting the will.

The evidence does not show that the note and mortgage, though for more than a reasonable amount, were executed while the parties were acting upon an equal footing. Estudillo testified it was given simply at his request, with no discussion except as to the amount of interest. On the other hand, Brenneman stated he did not know what the extent of the property included in the mortgage was until foreclosure proceedings were begun; that ''my wife was frightened and is to this day. She was afraid of Estudillo. He forced us to do it, he would not let us go out of his office.'' Mrs. Brenneman stated that Estudillo ''acted like he was angry and I thought he was, because his face got so red. He raised up that way and leaned over the drawer. I was afraid of him. I signed the note and mortgage because I thought I had to. He told me I had to and I thought I had to''; that ''I always had confidence in Mr. Estudillo, and I thought he was all right as an attorney, and I thought whatever he told me to do I had to do.'' She testified further: ''Q. Why did you go to Mr. Estudillo's office on May 31, 1913? A. Because I thought I

had to. Mr. Estudillo sent for me to come. Q. Did you think you had to go every place Mr. Estudillo sent for you to go? A. I felt that I had to do everything that Mr. Estudillo told me to do then.'' Both respondents stated that they continued to consult Estudillo because they feared he would be insulted if they did not, and because they believed he would eventually "do right" in the matter of the will contest. There was other evidence to the same effect.

It thus appears the contract was entered into while the relation of attorney and client existed and was advantageous to the attorney, Estudillo. This raised a presumption of undue influence and cast the burden on appellant to prove the transaction was fair and regular. Appellant failed to show that the transaction was fair and regular, or that the agreement was for a reasonable amount. Thus the presumption that it was entered into under undue influence was not rebutted. [6] Under these circumstances the contract was voidable at the instance of respondents. Hence, the court could have found, as it did, what was a reasonable fee for the services performed. The finding is that an amount equal to such a fee had already been paid. It follows there was nothing more due to him, and the conclusion and judgment in favor of respondents must therefore be upheld.

Since the evidence sustains the findings above referred to, and those findings support the judgment, it becomes unnecessary to consider the alleged insufficiency of the evidence as to the others. (*Wheat* v. *Bank of California*, 119 Cal. 4, 7 [50 Pac. 842, 51 Pac. 47].)

[7] 2. Appellant's next contention is that "defendants by their act in paying through Mr. Estudillo's stenographer $4,000 on the principal, voluntarily as the evidence shows, ratified and confirmed the note and mortgage of May 31, 1913.'' The court found that certain payments on interest on the note and mortgage were made between February 6, 1914, and September 22, 1915, and that $4,000 was paid on the principal January 15, 1915; that "said payments were not made freely or voluntarily, but were made under the circumstances and by reason of the influence and motives in these findings mentioned, and at times when the relation of attorney and client continued to exist between

said Miguel Estudillo and said defendants.'' Appellant insists this finding is not supported by the evidence, in that at the times the payments were made Estudillo was not acting as attorney for either of respondents. Inasmuch as it was not shown how long a period the various services covered, or what interval elapsed between them, it cannot be said the court was not justified in concluding that Estudillo was acting continuously as Brenneman's attorney at the times the payments were made. With reference to the payments, Brenneman stated that he paid interest on the note and mortgage for a while, but that he let Estudillo ask him for it; that he did not want to pay it very much, but that he did pay it; that he paid ''because I had to do it. That is the reason. He would not leave me off.'' He also testified that all the interest payments were made by him. Such testimony as this amply supports this finding.

[8] 3. Appellant contends that respondents have been guilty of laches, and that a finding of the court to the effect that neither Estudillo nor appellant has been injured by the delay of respondents in questioning the validity of the note and mortgage is not supported by the evidence. This contention cannot be maintained. In *Estate of Cover, ante,* p. 133 [204 Pac. 583], it was said that ''while it is the rule generally that a cause of action grounded in fraud must be instituted within three years from the time of the discovery of the fraud, that rule does not apply to a defense interposed upon the ground of fraud in a case where it is affirmatively sought to have declared valid and enforceable a contract claimed to have been conceived and consummated in fraud. In such a case, neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud. [Citing cases.]'' Respondents here are not suing to rescind the agreement, but are interposing the defense of undue

influence. This case is therefore analogous to *Estate of Cover, supra,* and respondents are not barred by any delay in seeking relief, but were entitled to plead their defense whenever appellant sought to recover.

4. The next contention is that the court erred in assuming to determine what was a reasonable compensation in the matter of the will contest. Inasmuch as it was alleged the contract was entered into by respondents through undue influence, it was necessary for the court to determine whether or not the fee charged was reasonable, as showing whether the contract was fair and regular. Appellant has cited certain authorities to the effect that in an action for attorney's fees, where both parties have full knowledge of all the facts, the jury is not empowered to go behind the agreement between attorney and client to decide whether, in addition to being free from undue influence, the agreement is for a reasonable fee. In view of the fact that the contract here was found to have been entered into under undue influence, it is unnecessary to consider those cases.

5. Three of the findings are claimed by appellant to be in conflict. These are to the effect that the note and mortgage were executed without any consideration whatsoever; that the note and mortgage were executed and delivered instead of and in place of the promissory note of June 12, 1912; and that the note and mortgage were executed in partial payment of the attorney's fees claimed by Estudillo to be due, and for no other consideration. One of the allegations of the answer was that there was no consideration for the note and mortgage. Appellant claimed that the note of June 12, 1912, in exchange for which the note and mortgage were given, was a valid consideration even if there were no other. Since the conclusion we have reached does not involve the question of consideration, it will not be necessary to pass on this assignment of error.

The judgment is affirmed.

Wilbur, J., Sloane, J., Shurtleff, J., Lennon, J., and Shaw, C. J., concurred.

Rehearing denied.

All the Justices concurred.