[Civ. No. 2623.   Third Appellate District.—August 2, 1923.]

MARTHA SCHURMAN, Appellant, v. HALLECK HART LOOK, Respondent.

[1] DEEDS — CANCELLATION — CONFIDENTIAL   RELATION — PRESUMPTIVE UNDUE INFLUENCE—EVIDENCE—FINDING—APPEAL.—In an action to set aside a deed on the ground of undue influence, the conclusion of the trial court, made upon conflicting evidence, that the proof introduced by the defendant overcame the presumption of

1. When presumption of undue influence is indulged, note, 21 Am. St. Rep. 94.

undue influence arising from the confidential relation that existed between him and the grantor, will not be disturbed on appeal.

[2] Id.—Character of Transaction—Duty of Trial Court.—In such an action, it is for the trial court to determine, after a consideration of the entire evidence, whether the transaction was fair and honest and the conveyance was the voluntary, untrammeled, and uninfluenced act of the grantor.

[3] Id.—Adequacy of Consideration — Evidence—Appeal.—In such an action, adequacy or inadequacy of the consideration for the deed is an important circumstance to be considered by the trial court in arriving at a conclusion but if the appellate court should be satisfied that the consideration was, according to the ordinary standards, pecuniarily inadequate, that alone would not justify a reversal.

[4] Id.—Undue Influence—Section 2235, Civil Code—Meaning of. Section 2235 of the Civil Code, which declares in substance that all transactions between a trustee and his beneficiary by which the trustee obtains any advantage from his beneficiary are presumed to be entered into by the latter without sufficient consideration, and under undue influence, provides for a rule of evidence, states a disputable presumption, and means that when such relation of confidence appears it is not incumbent upon the beneficiary to offer any proof of actual undue influence, the law creating that inference, but the burden is then cast upon the trustee, if he desires to maintain a contract of advantage to himself, to satisfy the court that his dealings with the beneficiary were in the utmost good faith and unaffected by the influence of the confidential relation.

[5] Id.—Independent Advice—Evidence.—In cases involving the exercise of actual undue influence and those involving the presumption of such influence arising from the confidential relation, affirmative evidence of independent advice furnishes a potent reason for sustaining the validity of a conveyance.

[6] Id.—Consideration—Finding—Judgment.—In such an action, to support the judgment in favor of defendant, no finding that the consideration for the deed in question was adequate was required.

[7] Id.—Finding—Absence of Prejudice.—In such an action, the plaintiff was not prejudiced by a finding (which was unsupported by the evidence) that the grantor "did not have great trust and confidence, trust or confidence, or repose great trust or confidence in said defendant, at the time of the making and execution of said deed," since if the finding had been the other way, as it ought, it would not affect the judgment.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Irving D. Gibson and Herbert E. White for Appellant.

C. E. McLaughlin, C. P. McLaughlin and W. F. Renfro for Respondent.

BURNETT, J.—The action is by a devisee under the will of Sophia Graff, deceased, to set aside a deed executed by her some three years after the execution of the will and approximately a year before her death. The character of the attack made upon the deed is sufficiently disclosed by the following allegations of the complaint:

"That for many years prior to the death of said Sophia Graff, defendant had been continuously, and at the time of the death of said Sophia Graff, was, the family physician of said Sophia Graff, her intimate personal friend and trusted and confidential adviser in all matters and transactions and that for many years, to-wit, more than ten years prior to the death of said Sophia Graff, she had complete trust and confidence in defendant and believed that defendant would not advise her or persuade her to act against her own interests or for the advantage or benefit of defendant; that at the time of the death of said Sophia Graff and for more than two years prior thereto, defendant continually had and exercised complete influence, domination and control over the mind and acts of said Sophia Graff and that by reason thereof defendant could, and did, during all of said period, dominate, control and influence, in whatever manner he might wish, the conduct and acts of said Sophia Graff; that for more than one year prior to the death of said Sophia Graff, by reason of the dominating influence and control which defendant exercised over the mind of said Sophia Graff, she permitted defendant to have control and exclusive charge of all legal and other papers and all matters and things concerning her property; . . . that by reason of said dominating influence and control and said trust and confidence reposed in defendant, as plaintiff is informed and believes and therefore alleges, defendant was able to and did procure said Sophia Graff to sign that certain purported

and pretended deed of conveyance hereinabove mentioned, purporting to convey to defendant that certain real property described therein; that said deed was signed by said Sophia Graff at a time when she was incapable of understanding the nature, quality or effect of her acts and at a time when she did not realize or give attention to the effect of said purported deed and that said Sophia Graff signed said purported deed during and while she was subject to and under said dominating influence and control of defendant and because of the great trust and confidence which said Sophia Graff reposed in defendant at said time; . . . that defendant did not permit said Sophia Graff to have, and she did not have, any independent or other advice, counsel or information whatever concerning said purported deed, the purpose or effect thereof and that said Sophia Graff signed said purported deed without any knowledge, information or advice whatever as to the effect thereof and solely because of said dominating influence and control and trust and confidence hereinabove mentioned; that said purported deed was procured and obtained by defendant from said Sophia Graff for the purpose and with the intent to defraud and deprive plaintiff and the other devisees other than defendant of all their right, title and interest in and to said real property and to obtain and acquire the title to the whole of said real property in the name of defendant without any consideration of any kind or character passing from defendant to said Sophia Graff in violation of the trust and confidence reposed in defendant by said Sophia Graff, and in fraud of plaintiff.''

In his answer defendant denied all the allegations of the complaint charging or implying any domination or influence or improper conduct in relation to the execution of the deed and also the allegations as to the consideration and independent advice, and he averred his ownership of the property by reason of said deed executed knowingly, intentionally, and freely by said Sophia Graff for a valuable consideration. The findings and judgment were in his favor, and plaintiff brings the appeal.

We may dismiss with a word or two every consideration of intentional mischief or actual undue influence on the part of defendant, as well as any want of information or knowledge on the part of the grantor of the nature and effect of said deed, as there is no pretense of any evidence to sustain

the theory of the complaint in those respects. Indeed, as we understand the position of appellant, her only claim here is that the judgment must fall by reason of the confidential relation that existed between the parties; the presumption that flows from such relation, and the failure of respondent to satisfy the requirement of the rule demanding that he overcome by clear and satisfactory proof the legal compulsion of such presumption. She states in her brief:

"It is very evident that defendant has misapprehended the character of undue influence charged in this case. A great part of defendant's brief is devoted to a discussion of evidence tending to show that Sophia Graff was 'an unusually competent woman, in good health, strong will and superior intelligence.' It was not claimed on the trial, and is not now asserted that any *actual* undue influence was proven to have been exerted upon Mrs. Graff by Dr. Look, but it was sufficient to prove that fiduciary relations existed between them and thereupon a presumption of undue influence was raised which could be in no wise affected by any evidence as to the intelligence or will power of Mrs. Graff. . . . The burden was necessarily on Dr. Look to show that the transaction was fair and regular and that there was an adequate consideration for the transfer. To sustain this burden and rebut the presumption against him it was necessarily *incumbent upon him* to introduce evidence that he had a legal claim for his medical services, payment for which was the alleged consideration, and also of their reasonable value, to afford some basis for determining that the consideration *was adequate.* He met this duty with eloquent silence and the state of the record is that the services were of no value because no evidence of their value appears."

To support her view of the law appellant cites a number of authorities, among them being the late cases of *Espinosa* v. *Stuart,* 52 Cal. App. 477 [199 Pac. 66], *Bonifacio* v. *Stuart,* 52 Cal. App. 487 [199 Pac. 69], and *Magee* v. *Brenneman,* 188 Cal. 562 [206 Pac. 37].

Before commenting upon these and other authorities or stating what we conceive to be the true rule in such cases, we deem it proper to set forth the main part of the evidence upon which respondent relies to justify the judgment in his favor. It seems that William F. Renfro, a reputable attor-

ney of Sacramento, drafted the deed in question, and as to what occurred between him and Mrs. Graff he testified:

"Well, Mrs. Graff came in a little after 2 in the afternoon, and told me that she came up to have me draw a deed to Dr. Look; said that she wanted to make him a deed of the property down on Fifth Street, for what he had done for her. I said, 'Well, have you got a description?' 'Yes,' she said, 'I have got it here on a piece of paper.' So, as is my usual custom when I draw any documents of any importance, I get my shorthand book and write it all out, first in shorthand, to get it as I want it; then I sit down at the typewriter and run it off. That is what I did, and when I finished the sheet, I read it over to her, and asked her if it was satisfactory, and she said yes. She signed it. I then took her acknowledgment and after I had taken her acknowledgment, I said to her: 'Now, Mrs. Graff, do you want to hold this deed, or do you want the doctor to have the title now?' 'Well' she said, 'I want him to have it now, because that is what I came up here for.' 'Well,' I said, 'in order for the title to pass, it will be necessary that a delivery be made, and if you want him to have it now, why I will call the Doctor up on the phone, and see if he is there, and if he is why I will have him come to my office and we will deliver it to him here.' She says, 'All right; call him up.' I called the Doctor up, and he came up in about ten or fifteen minutes after I had called him. When the Doctor came up, I explained to him why I sent for him. I told him that Mrs. Graff had made the deed in his favor and I told her that if she wanted the title to pass now, that she had better make a delivery to him at once, if she wanted it passed at once, and she said that she did; 'that is why I sent for you.' She had the deed at that time in her hand, and she said, 'Yes, Doctor, here is the deed.' She says, 'I want you to have it for what you have done for me in the past.' She gave the deed to the Doctor, the Doctor thanked her, and they had a few words, and shortly after that they went out, and I heard the Doctor say, as he was going out, 'Now, you can stay in this place as long as you want to.'"

He testified, further, that he did not know why she had come to him to draw the deed; that he had never seen her before and did not have any communication with Dr. Look in reference to it until the latter came over to the office in

response to said telephone.  He also testified that while they were waiting for the doctor to come she said to him: "I have drawn my will, Mr. Renfro, but I am not satisfied with it.  There are some changes that I want made, but I don't want to make them until certain contingencies arise, and they haven't happened yet, and I don't want to have my will rewritten until they do happen.  When they do I will come in and I will have you write my will for me."

Defendant's testimony as to what occurred when the deed was delivered was substantially the same as that of Mr. Renfro, his statement being: "When I came in the door I saw Mrs. Graff standing back of the desk holding the document in her hands; she said: 'Here, Doctor, is a deed to my property; it is now yours; I give you this for what you have done for me.'"

He further testified that prior to this occasion he had been told several times by Mrs. Graff that she intended to deed him the property for what he had done for her; "she said she wanted to pay me, and she did not want to take up any of her mortgages, because it would reduce her income and she wanted to pay me with the property . . . for my services for her and her mother. . . . She told me that she had consulted at one time yourself [attorney for appellant] . . . and that you advised against it, that the property would pass out of her hands"; that this statement about the consultation was made a short time before the deed was executed; "she was suffering of late years, the last ten years with enlarged liver; that brought it up, I had to come there to watch her . . . she said, 'I will give you this property— it is dead, there is no income from it at all, if you are satisfied with it, I will give it to you.'  I said, 'Very well, if it is satisfactory to you it is to me.' . . . When I started in with her, she had an attack of chronic catarrhal deafness, that was almost interminable.  I worked on that for years, I do not know how many years; . . . about the last ten years the enlargement of the liver developed. . . . I treated her for that condition all the time, whenever it gave her trouble first; then later on she was taking medicine for that."  He further testified that he never presented any bill to Mrs. Graff and never collected anything for his services to her or to her mother, and that he loaned Mrs. Graff considerable sums of money the last few years of her life, and

that the deed was to include said sums; that, prior to the execution of the deed, he never spoke to Mr. Renfro or to Mrs. Graff about it, and he did not know that she was going to Mr. Renfro's office.

Much other evidence of importance appears in the transcript, but we deem it unnecessary to quote further. We may say, however, as to the entire record that beyond question the trial court was legally justified, as substantially asserted by respondent, in reaching these conclusions: 1. After Sophia Graff had devised this property to appellant, respondent and another, all strangers to her blood and bounty, she entertained and expressed her intention to convey it to respondent. 2. She sought and received independent advice from the attorney for appellant, who not only advised her against the execution of the deed, but informed her of its effect. She had also the independent advice of Mr. Renfro as to the effect of the delivery of the deed. 3. She was a woman of more than ordinary mental vigor, and difficult to persuade or influence. 4. After her consultation with the attorney for appellant, apparently being dissatisfied with his advice, she voluntarily sought another attorney, taking with her a description of the property, and at her direction the deed was there prepared by Mr. Renfro and signed and acknowledged by her without the presence of respondent. 5. Mr. Renfro informed her that unless she delivered the deed it would be of no effect, and she requested him to telephone respondent to come to the office, and after his arrival she delivered to him the deed, stating, as we have seen, why she conveyed to him the property. 6. Respondent never at any time requested or suggested to her that she either devise or convey to him any of her property. Neither did he encourage her when she told him she intended to pay him in this way. 7. There was a good and valuable consideration for the deed. 8. At the time the deed was executed she told Mr. Renfro that she was not satisfied with her will and intended to have it rewritten, thus indicating that she had the will in mind and intended the deed to supersede it as to this property.

[1] In view of the foregoing we think it would be a usurpation of the legitimate province of the trial court for us to say that the presumption of undue influence was not overcome and the decision should have been in favor of ap-

pellant. [2] While it is true, as stated by the trial judge, that "the law is very jealous of this kind of dealings, scrutinizing them very searchingly and suspiciously when they are had in a way that leaves any doubt of their integrity and that they were fairly obtained and justly procured," yet it is for the trial court to determine, after a consideration of the entire evidence, whether the transaction was fair and honest and the conveyance was the voluntary, untrammeled, and uninfluenced act of the grantor. It is to be assumed, of course, that the trial judge herein followed the rule which he announced and was entirely satisfied that said presumption of undue influence was overcome and the grantor was under no actual or constructive constraint when she executed the deed. (*Barry* v. *Beamer*, 8 Cal. App. 200 [96 Pac. 373].) It may be admitted that in cases of this character the evidence should be "clear, satisfactory, and conclusive," but, as distinctly held in the Barry case, *supra*, supported as it is by the numerous authorities therein cited, whether the evidence in any case is of this character must be determined by the trial court, and if there is any substantial evidence to uphold the findings they are binding upon an appellate tribunal. In view of the earnest contention of appellant, we cannot make it too plain that the authority of this court to review the conclusion of the trial court is subject to the same limitations that prevail generally in cases that are appealed. We may admit that, if the lower court had decided in favor of appellant, we could find in the record support for such finding. Said presumption of itself would be sufficient legally to justify that conclusion. Moreover, appellant with great skill and plausibility points out certain facts and circumstances disclosed by the testimony which, she claims, tend to an interpretation of the transaction favorable to her contention. But, we repeat, the foregoing is beside the real question, which is whether there is any legal support for the judgment in favor of respondent.

We may be permitted to say, also, that appellant is in error in contending that any certain kind of evidence is indispensable to support a finding in favor of the validity of the conveyance. She argues that it must have been shown, for instance, that there was an *adequate* consideration for the deed and, since the evidence does not show that the services of Dr. Look were worth in money as much as

the property in dispute, the case for defendant was not made out. [3] The truth is, however, that adequacy or inadequacy of the consideration is an important circumstance to be considered by the trial court in arriving at a conclusion but if the appellate court should be satisfied that the consideration was, according to the ordinary standards, pecuniarily inadequate, that alone would not justify a reversal. Herein there is no direct evidence of the reasonable value in money of the services of respondent, but manifestly from his recital of his attentions to Mrs. Graff for over fifteen years a just compensation would mean the payment of thousands of dollars. We may add that his failure to make an estimate of what his services were worth in money was probably due to the interruption by appellant of the witness when he was attempting to answer the question: ''What was the value of your services to Mrs. Graff?'' He said he could estimate, although he kept no record. Before he could state his estimate, however, his attention was directed to other questions. But, at any rate, it is reasonable to say that Mrs. Graff undoubtedly considered his services of incalculable value and that his long-continued kindness to her and to her mother, manifested not only as a physician but as a constant friend, deserved the recognition which she accorded by the conveyance.

Appellant seems to think that adequacy of consideration is required by the terms of section 2235 of the Civil Code. The language of that section is: ''All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence.''

[4] It is apparent that this section provides for a rule of evidence, a presumption that must be applied whenever such condition exists. But it is a disputable presumption, and simply means that when such relation of confidence appears it is not incumbent upon the beneficiary to offer any proof of actual undue influence, the law creating that inference, but the burden is then cast upon the trustee, if he desires to maintain a contract of advantage to himself, to satisfy the court that his dealings with the beneficiary were in the utmost good faith and unaffected by the influence of

the confidential relation. Manifestly, the courts cannot take away from any party the constitutional right to dispose of his property as he sees fit, to give it away or to sell it for whatever price he desires to whomsoever he pleases, but for the protection of the weak against the strong and to aid in the determination of the actual condition of the mind of the party from whom the advantage is secured the legislature has provided this rule of evidence.

The question has been frequently considered by the courts of this and other jurisdictions, but only a few of the decisions do we deem it advisable to notice specifically.

In *Hemenway* v. *Abbott*, 8 Cal. App. 450 [97 Pac. 190], the various circumstances that are deemed important in such transaction are discussed and the general rule is stated as follows: ''The agent and principal are not prohibited from dealing with each other; but in all their dealings respecting the subject matter of the agency the utmost good faith is required; and the burden of proof is upon the agent to show affirmatively that he acted in good faith, fairly and honestly. Where such proof is made, a deed from the principal to the agent will be sustained.''

It was held therein that since the evidence showed the parties to be in a position to form an independent judgment and the grantor was capable of disposing of his property without the aid of an attorney or independent advice, neither the absence of such advice nor the inadequacy of the consideration nor the fact that it was a gift without other equitable incidents would warrant the cancellation of the deed on the ground that there was a confidential relation.

[5] While, as to the importance of independent advice, the Hemenway decision distinguishes between cases turning upon the exercise of *actual* undue influence and those involving the presumption of such influence arising from the confidential relation, holding that only in the former is it of vital significance, yet it does not militate against the view that, in both classes, *affirmative* evidence of independent advice furnishes a potent reason for sustaining the validity of a conveyance. In this case that circumstance was entitled to great weight and, no doubt, it was so regarded by the trial court. It is true that the advice of appellant's attorney appeared through hearsay testimony but no objection was made to it and under such circumstances it may be

considered as evidence unobjectionable in form. Besides, the fact that the attorney for appellant made no denial of the consultation, although he was on the witness-stand, leaves no doubt that she actually consulted him in reference to the deed, and one knowing his ability and thoroughness in legal matters would entertain no misgivings that she was not fully informed as to every important phase of the situation. It is true that the exact time of the consultation does not appear, but only a little while before the deed was executed she informed respondent of the occurrence, showing that it had not been forgotten, and there is nothing in the record to compel the conclusion that the confidential relation had any effect whatever in causing her to disregard the advice of the learned attorney for appellant.

In *Zihn* v. *Zihn*, 153 Cal. 405 [95 Pac. 868], wherein a deed of gift from a father to his daughter was assailed on the ground of fraud, it was said: "Any presumption of fraud arising from the admitted allegations of the complaint respecting the confidential relations of the parties may be rebutted, and the effect of the presumption, if any is raised, is merely to throw upon the donee the burden of showing that the gift was made freely and voluntarily, with full knowledge of all the facts and with perfect understanding of the effect of the transfer. (*Soberanes* v. *Soberanes*, 97 Cal. 140 [31 Pac. 910]; *Arellanes* v. *Arellanes*, 151 Cal. 443 [90 Pac. 1059].)"

In *Metropolis etc. Savings Bank* v. *Monnier,* 169 Cal. 592 [147 Pac. 265], the relation of attorney and client was involved and the court said this relation "is of a fiduciary character and the Civil Code [section 2235] clearly provides that all transactions between a trustee and his beneficiary during the existence of the trust, by which he obtains any advantage from his beneficiary, 'are presumed to be entered into by the latter without sufficient consideration and under undue influence.' This does not mean that a trustee may not deal with his beneficiary. But if he does deal with him in such manner as to obtain an advantage, the trustee has the burden of showing by evidence that the transaction was fair."

In *Cox* v. *Schnerr,* 172 Cal. 371 [156 Pac. 509], *Campbell* v. *Genshlea,* 180 Cal. 213 [180 Pac. 336], and *Fowler* v. *Enriquez,* 56 Cal. App. 107 [204 Pac. 854], the principle

is reasserted and discussed, it being said in the last of these: "It is contended by appellant, however, that the presumption was overcome by testimony introduced by him. There was considerable testimony presented by appellant on the subject, it is true, but we cannot say that it was sufficient to outweigh the presumption. The solution of that question was within the peculiar and final province of the trial court, for the presumption on the one hand and the testimony opposed to it on the other presented but a conflict of evidence. The finding of the trial court on the subject is final. (*French Bank* v. *Beard,* 54 Cal. 480.)" See, also, *Nobles* v. *Hutton,* 7 Cal. App. 14 [93 Pac. 289], and *Piercy* v. *Piercy,* 18 Cal. App. 751 [124 Pac. 561].

This well-established rule amply justifies and constitutes the foundation for the decision in each of the late cases to which appellant refers.

In *Espinosa* v. *Stuart,* 52 Cal. App. 477 [199 Pac. 66], the controversy arose out of a transaction between the plaintiff as client and the defendant as his attorney and legal adviser. The court pointed out that the plaintiff had deeded to the defendant property of the value of forty thousand dollars and had assigned to him rents amounting to several thousand dollars more and that the value of the services rendered by the defendant to the plaintiff was only five hundred dollars. Attention is also directed to other facts indicating the gross inequity of the transaction and it was very properly held that the trial court was warranted in the decision for plaintiff, both on the ground of "*actual* undue influence and a violation of fiduciary relations." Assuredly, as said by the district court of appeal, in such case "the attorney, or those claiming under him, cannot safely rest, as they did in this case, without affirmative proof of the facts surrounding the transaction."

*Bouton* v. *Stuart,* 52 Cal. App. 484 [199 Pac. 71], involved a similar situation and resulted in an affirmance of the judgment. The plaintiff therein also relied upon active as well as implied undue influence, one of the allegations of the complaint being that a written contract between the parties called for a fee measured at two-tenths of the plaintiff's share, whereas the defendant took from the plaintiff transfers measured at three-tenths. The plaintiff introduced testimony to support her complaint and as the court says,

"the defendant introduced some testimony to the effect that the plaintiff had been advised as to the contents of the papers which she signed; thereupon, and in rebuttal, the plaintiff called the county assessor and, over the objection and exception of the defendant, the assessor testified that the whole tract, of which the property in dispute was a part, had a value of eight hundred thousand dollars. There was no error in receiving this testimony. The burden of showing that the transfers were fair and the consideration was adequate rested on the defendant." There is no doubt the ruling was correct. The plaintiff was not required to rely only upon the presumption of undue influence, but had a right to aid and supplement it by showing such circumstances as the inadequacy of the consideration. While the court's statement that the burden was upon the defendant to prove that the consideration was "adequate" is somewhat inaccurate, if the expression was used to indicate a monetary equivalent, the decision is manifestly sound. It may be that the court used the term, however, as indicating a consideration "not so disproportionate as to shock our sense of that morality and fair dealing that should always characterize transactions between man and man." (*Eaton* v. *Patterson,* 2 Stew. & P. (Ala.) 9, 19.) If so, it could hardly be criticised.

*Bonifacio* v. *Stuart,* 52 Cal. App. 487 [199 Pac. 69], was a similar case and the judgment was affirmed for the same reason. Therein the court noticed the failure of the appellant to distinguish between the case of actual undue influence and the violation of the duties arising out of a fiduciary relation, and properly held that in the latter class it was not necessary to prove any overt acts of or constituting undue influence since reliance could be had upon said presumption.

In the *Magee* v. *Brenneman* case, 188 Cal. 562 [206 Pac. 37], likewise, the judgment of the lower court was in favor of the beneficiary, and a reading of the decision leaves no doubt that the judgment was right and was properly affirmed. The supreme court concisely and clearly stated the rule to be that, when a confidential relation is shown the burden is shifted to the trustee who has gained an advantage to prove "that the transaction was fair and regular and was entered

into by respondent voluntarily with a full knowledge of the facts.''

We deem it unnecessary to notice other cases that have been cited as we think there is no substantial want of harmony as to the controlling legal principles.

[6] It follows that no finding that the consideration was adequate was required. There was, indeed, no such allegation. Plaintiff, as we have seen, alleged that there was no consideration whatever for the conveyance. The court negatived this averment and found ''a good and valuable consideration'' for the conveyance. This, in connection with the other findings showing that the deed was executed freely, voluntarily, understandingly, and when the grantor was not subject to any extraneous influence, is sufficient to support the judgment. At any rate, the findings necessarily compelled a judgment against the plaintiff, since the court found against her upon all the material allegations of her complaint.

Appellant also criticises the finding ''that Sophia Graff did not have great trust and confidence, or trust or confidence, or repose great trust or confidence in said defendant, at the time of the making and execution of said deed.''

[7] It is true the evidence does not support this finding: to the contrary, it shows that she did have great trust and confidence in him. No doubt, that was one of the reasons why she deeded him the property. However, the error is without prejudice, since, if the finding had been the other way, as it ought, it would not affect the judgment.

We have examined with care all the points and all the authorities that appear in the thorough and comprehensive briefs of appellant, but we think there is no sufficient reason for disturbing the judgment of the trial court.

We may say, in conclusion, that the result does not appear to be unconscionable. It is not at all strange or surprising that Mrs. Graff should deed the property to respondent, although it was of the value of eight thousand five hundred dollars and comprised about three-tenths of her estate. He had performed valuable services for her over a long course of years and seems to have been, besides, a warm personal friend. She had no immediate relatives and there is no evidence that she had any particular regard for her col-

lateral kindred or that anyone else had such persuasive claim to her bounty as respondent.

At any rate, upon well-established principles, our duty seems plain and the judgment is affirmed.

Finch, P. J., and Hart, J., concurred.