[Civ. No. 20615. Second Dist., Div. One. Mar. 7, 1955.]

RAYMOND N. PRIESTER, Respondent, v. CITIZENS NATIONAL TRUST AND SAVINGS BANK OF LOS ANGELES (a National Banking Association) et al., as Executors, etc., Appellants.

John W. Preston and Millsap & Schaumer for Appellants.

Henry Merton and Fred Girard for Respondent.

WHITE, P. J.—This is an appeal from a judgment for plaintiff rescinding an agreement, deed, assignments, and other instruments executed by plaintiff, by which an undivided one-fourth interest in certain real and personal property worth in excess of $22,500 was transferred to his lawyer, the late William Ellis Lady, and quieting plaintiff's title to such property as against any claim of defendants, who are the executors of the *Estate of Lady.*

The complaint is in three counts, for rescission, reformation and quiet title, respectively. All the allegations of the first and third counts are found by the trial court to be true.

For many years prior to his death on February 26, 1951, Lady was engaged as attorney for plaintiff in various legal proceedings. During the period of several months immediately preceding the commencement of action No. 580554, a matter involving rescission by plaintiff of a sale of real property to his brother was pending in Lady's office. Plaintiff had been actively engaged in business until 1947. He then

suffered an illness which left him blind and extremely nervous.

In December, 1950, plaintiff's mother sued him to recover an apartment house of the net value, over and above the mortgage, of $85,000. She attached the real property, its furnishings, and plaintiff's bank account and two brokerage accounts. It was an undivided one-fourth interest in these properties which plaintiff had transferred to Lady. They constituted practically all of plaintiff's assets. The action by plaintiff's mother is herein referred to as No. 580554. About December 4, 1950, Lady commenced plaintiff's defense therein. In December 1950 and January 1951, Lady was consulted many times by plaintiff, conferred with several of his friends, assisted plaintiff's accountant in preparing statements and summarizing plaintiff's records, attended two sessions re depositions and one deposition contempt hearing, prepared plaintiff's answer and filed it on January 30, 1951.

On January 29, 1951, when decedent and plaintiff executed the agreement, and plaintiff made the deed and signed the other instruments sought to be rescinded and cancelled in the instant action, the relationship of attorney and client existed. The agreement, deed and other instruments were prepared in Lady's office. The agreement was read to plaintiff and he knew the purport of it and of the other instruments. At plaintiff's request, an attorney who was his distant relative and long time family friend, went with him to Lady's office, read the agreement to plaintiff and, in the presence of Lady, as plaintiff's friend and not as his lawyer, told plaintiff that he felt ''he was giving more than he should for the transaction''; Lady said he would not take care of the case on any other basis. Plaintiff ''insisted on going ahead and signing the agreement.'' According to plaintiff's testimony, Lady had told him the deed would not be recorded and would be held by him as security for whatever fee should be fair when the work was finished; plaintiff believed Lady and trusted him; and he would not have signed the agreement or any of the other instruments if Lady had not made that promise. The deed was recorded by the appellants on June 5, 1951, about three months after Lady's death. On November 1, 1951, plaintiff first became aware of the recording of the deed. He repeatedly demanded reconveyance of his property and offered to pay the reasonable value of services rendered by Lady. Defendants refused to reconvey and refused to state what amount, if any, they claimed to be

due by reason of any legal services rendered by Lady. Without legal assistance from anyone after Lady's death in February, plaintiff settled his differences with his mother and her dismissal with prejudice was filed in said action No. 580554 on September 16, 1951.

Appellants urge as their first ground for reversal that "the trial court erred in holding that the contract between plaintiff and W. E. Lady . . . is void and unenforceable."

■ A contract, conveyance, or transfer of any kind made by the client during the existence of the attorney-client relationship by which the attorney secures any advantage is presumptively invalid for undue influence and lack of consideration; and, when attacked by the client, the burden is cast upon the attorney to show that the transaction was fair and equitable and that no advantage was taken by him. (Civ. Code, § 2235; *Bonifacio* v. *Stuart,* 52 Cal.App. 487, 489 [199 P. 69]; *Clark* v. *Millsap,* 197 Cal. 765, 783 [242 P. 918]; *United States Oil & Land Co.* v. *Bell,* 153 Cal. 781, 786 [96 P. 901].)

■ While, in cases of this kind, the presumption can be overcome by clear, convincing and satisfactory evidence, the questions of what constitutes such evidence and whether the presumption is overcome are addressed to the trial court, and its decision will not be disturbed on appeal except in cases where it is supported by no substantial evidence. (*Roberts* v. *Wachter,* 104 Cal.App.2d 271, 279 [231 P.2d 534].)

Appellants insist that Lady did not take any advantage of plaintiff and that the fee provided for in the contract "was not excessive or unconscionable," for the reason that the property (valued in excess of $22,500) was also to cover Lady's services rendered in cases other than No. 580554, including the Liebenguth, Ajax, Beard and Crebs cases, in which some years before Lady had represented plaintiff and his mother. In their answer and cross-complaint, appellants allege upon information and belief that plaintiff agreed to pay Lady for his services in such other cases the reasonable value thereof, and that the reasonable value of such services was $7,500. These allegations of the answer were found to be untrue, and the finding is supported by the evidence. Appellants failed to produce any of decedent's books of account, contracts, letters, or any other convincing evidence to prove that Lady had not been paid in full for all services rendered by him for plaintiff in any of those cases. Plaintiff denied that he owed Lady for any past services and testified

that he had been told by Lady, and by appellant, Amber Morrison, who was then Lady's secretary, that he owed nothing on account of such services and that the cash payments made by him from time to time and the optical goods and services furnished by him at Lady's request had fully paid for them.

█ The court found that Lady's services rendered in action No. 580554 were reasonably worth $400 and no more; that friends sought to bring about a reconciliation between plaintiff and his mother; but that Lady sought to and did prevent such reconciliation; and that the services were of no value to plaintiff under the circumstances. These findings also find support in the evidence.

*Thornley* v. *Jones*, 96 Cal.App. 219 [274 P. 93], was an action by the executrix of the client's estate to recover the client's property from her attorney. Judgment for defendant attorney was reversed. The court, at page 227, held that, even where the trial court had found that defendant had made no false or untrue representations to his 82-year-old client who had transferred to him securities worth $2,500 in payment for legal services worth about $300, ''proof of mere negative conduct on the part of an attorney dealing with his client is not sufficient 'to overcome the presumption of fraud and unfair dealing which is automatically raised by the law as a protection to a client.' (*Estate of Witt, supra* [198 Cal. 407 (245 P. 197)].) The attorney must go further and show that his client was given the information which, under similar circumstances, a disinterested legal adviser would have given.''

The contract cancelled and rescinded by the judgment from which the instant appeal was taken, was in the form of a letter from Lady to plaintiff, with plaintiff's agreement at the end to be bound by the terms set forth. It reads in part, ''. . . I am willing to undertake the defense of the action your mother brought against you . . . on the following basis: You are now to convey to me: . . .'' Here follows a full description of the property, an undivided one-fourth interest in an apartment house, its furnishings and equipment, its rents, issues and profits after February 1, 1951, a bank account and two brokerage accounts. Then follows one of the provisions most relied upon by appellants, to wit: ''If we are not successful in the defense of this action, then you will be under no obligation to me for any services I may have rendered at your request for the benefit of your mother

in defending the action of Liebenguth as assignee of the Bank of America and the Beard and Crebs action.'' The letter agreement also contains an option to plaintiff until one year after final judgment to repurchase said property for $25,000. It provides that costs are to be paid by plaintiff, but if the litigation is successful they are to be borne three-fourths by plaintiff and one-fourth by Lady. Plaintiff is to render such assistance as is within his power. Then follows the provision that ''This agreement will, of course, cover the matter of compensation whether the case shall be tried and judgment rendered, or the matter settled without going to trial, but if any compromise is agreed upon, such compromise shall, of course, be approved by both of us.'' Another pertinent provision of said letter agreement is that ''In case of my inability to proceed with the defense of said action No. 580,554, then my interest in the property aforesaid shall be reduced proportionately to the services rendered, and proper reconveyance executed.''

Considering the contract as a whole, it seems clear that Lady meant by it that the one-fourth interest in all the properties described, which were all the properties belonging to plaintiff, would be his fee if he were successful in defending plaintiff in action No. 580554. From the testimony of the parties and their witnesses it is plain that, if the defense was unsuccessful, plaintiff's mother would own the apartment house and plaintiff would be unable to pay a fee even for his defense of said action. The agreement does not provide that any fees for any past services shall be considered paid in the event of the successful defense of action No. 580554. Consequently, by the provision that ''if we are not successful'' plaintiff would ''be under no obligation'' to pay Lady for any services he ''may have rendered . . . for the benefit of'' plaintiff's mother, Lady was releasing nothing, even if he was still unpaid for services of great value. According to the written contract between plaintiff and Lady the transfer of properties valued in excess of $22,500 was the consideration for Lady's agreement to ''do all I can in the defense'' of said action No. 580554. The trial court did not err in finding the fee charged by Lady to be excessive and unconscionable.

█ In the instant action, as in *Magee* v. *Brenneman,* 188 Cal. 562, 571 [206 P. 37], '' [a]ppellant failed to show that the transaction was fair and regular, or that the agreement was for a reasonable amount. Thus the presumption that

it was entered into under undue influence was not rebutted. Under these circumstances the contract was voidable at the instance of respondents.''

The agreement involved on this appeal being invalid for the reasons hereinbefore stated, it is not necessary for this court to consider whether or not Lady's defense of plaintiff in action No. 580554 would have required that Lady violate any confidence which might have been given him when he previously acted as attorney for plaintiff's mother in other litigation.

■ Appellants argue that the trial court erred in denying defendants any relief under their answer and cross-complaint. Authorities are cited to the effect that where no answer to a cross-complaint has been filed all its allegations must be deemed true. Here the complaint sets out as exhibits the agreement and deed sought to be rescinded. The answer admits the execution of the documents and denies all allegations in the complaint which constitute plaintiff's grounds for rescission and quiet title.

A brief review of the facts first pleaded by the cross-complaint follows. Plaintiff remained in possession of the real and personal property described in the agreement; he received and retained all rents, issues and profits thereof; defendants demanded that plaintiff deliver to them one-fourth of the personal property and of the rents, issues and profits; and plaintiff refused to comply with their demand; the bank and brokerage accounts so withheld were worth $37,000. The allegations of the complaint itself either coincide with or negative all other allegations of the cross-complaint.

The new matter so alleged in the cross-complaint is deemed admitted and the court found some of it to be true; but the court further found in accordance with the complaint and the evidence ''that the defendants were not, and are not, entitled to be rendered an accounting by the plaintiff, and also the defendants were not and are not entitled to receive any sums whatever from plaintiff.''

The court did find, however, contrary to the allegation of the cross-complaint, that the bank and brokerage accounts were worth not $37,000 but only $11,005.16. Further, the court found that plaintiff rightfully retained possession thereof; and that plaintiff's refusal to account to defendants for his profits and his refusal to deliver to them one-fourth or any portion of the furniture, cash in bank and brokerage accounts was justified under the circumstances.

Neither section 462 of the Code of Civil Procedure, nor any of the cases relied upon by appellants, authorizes reversal of the judgment from which this appeal is taken on the ground that the cross-complaint was not answered. Here, the finding that the bank and brokerage accounts are worth less than their value as alleged in the unanswered cross-complaint could not have affected the court's judgment adversely to appellants. The larger value of these items would simply increase the already excessive and unconscionable amount of the fee charged under the agreement rescinded.

As said in *Lubarsky* v. *Chavis*, 99 Cal.App. 610, 616 [279 P. 205]: "The plaintiff's confession by default of the allegations of the cross-complaint did not, therefore, negative his cause of action set out in his complaint. Defendant was not entitled to judgment upon the pleadings because the issues made by the complaint and answer thereto if decided in favor of plaintiff would entitle plaintiff to judgment notwithstanding all the allegations of the cross-complaint be true."

Appellants next contend that the trial court erred in holding that plaintiff is entitled to rescind the contract without first returning to Lady's estate everything of value received by plaintiff under the contract. It is conceded that ordinarily, upon rescission, restoration of benefits received is ordered. However, we have examined all cases cited in this connection and none seems controlling on the facts now before us.

In *Magee* v. *Brenneman, supra,* at page 571, it is said: "Thus the presumption that it was entered into under undue influence was not rebutted. Under these circumstances the contract was voidable at the instance of respondents. Hence, the court could have found, as it did, what was a reasonable fee for the services performed. The finding is that *an amount equal to such a fee had already been paid.* It follows there was nothing more due to him, and the conclusion and judgment in favor of respondents must therefore be upheld." (Emphasis added.)

*Shahabian* v. *Najarian*, 14 Cal.App.2d 435 [58 P.2d 396], was an action against an attorney for damages in the amount by which his collections for the account of his client exceeded fair compensation for his services. Judgment for that amount was affirmed on appeal. Neither rescission nor restoration was involved.

*Clark* v. *Millsap*, 197 Cal. 765 [242 P. 918], was an action in accounting and to recover a client's properties from her attorney. The defendant was allowed to retain a $7,500 fee.

He contended on appeal that he was entitled to a credit of $20,000 for his fee. At page 785, the court said:

"The burden of showing that his dealings with his client in all respects were fair was upon appellant and he failed to satisfy the court of the justness of his claim. It is to be observed in this connection that *a court may refuse to allow an attorney any sum as an attorney's fee if his relations with his client are tainted with fraud.* 'Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered; as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties.' (6 Cor.Jur. 722, 723.) *But as opposing counsel did not object to the allowance of the sum of $7,500 as an attorney's fee and the court awarded that amount in full for all services performed, the order in that respect will be regarded as final.*" (Emphasis added.)

In the case of *Lady* v. *Worthingham,* 57 Cal.App.2d 557 [135 P.2d 205], plaintiff filed an action on a promissory note in the sum of $2,000. The trial court found no consideration for the note, but gave judgment for plaintiff for the amount of the probate fee allowed by statute for the work done for defendant. In affirming the judgment, the court said, at page 562: *"Since neither party is urging that it was error for the trial judge to give judgment in favor of plaintiff for $361.37,* while finding that there was not any consideration for the note upon which the action was founded, *it is unnecessary for us to determine whether such judgment was proper in this proceeding, which was solely one to enforce payment of a promissory note."* (Emphasis added.)

In each of the other cases cited by appellant in support of appellants' contention that the judgment should be reversed for the reason that plaintiff was not required to make restoration by payment of a reasonable fee for work done under the invalid agreement, the fees charged by the attorneys were expressly found to be fair and reasonable.

From the foregoing, it appears that under circumstances somewhat similar to those involved in the instant action attorneys have been given judgment for the reasonable value of their services. (*Magee* v. *Brenneman, supra; Clark* v. *Millsap, supra; Lady* v. *Worthingham, supra.*) However, in each instance the fee had been previously paid by the client or awarded by the trial court without objection.

While the record on the appeal now engaging our

attention shows plaintiff's prayer that the deed and contract be delivered up and cancelled upon his payment to defendants of "such sums as in equity and good conscience is found to be payable by him," it also shows that defendant failed and refused to plead, prove or pray for the reasonable value of any services rendered.

As said in *Utemark* v. *Samuel,* 118 Cal.App.2d 313, 317 [257 P.2d 657], "Equity is solicitous that the innocent party who rescinds be not made to suffer. It exercises no such solicitude for the wrongdoer . . ."

"On adjudging the rescission of a contract, the Court *may* require the party to whom such relief is granted to make any compensation to the other which justice may require." (Civ. Code, § 3408. Emphasis added.)

Under all the facts and circumstances surrounding the instant action, the trial court properly concluded that plaintiff should not be required to pay for any services rendered prior to the making of the contract as a condition to its rescission, and that the judgment in this action should be rendered "without prejudice to rights of recovery which the estate may have against plaintiff by reason of legal services rendered in other actions."

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.